[Crim. No. 19352. First Dist., Div. Three. July 8, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO FRANCISCO REYES, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Michael S. McCormick, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and John B. Moy, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

DEARMAN, J.*— ■  In this opinion we conclude that the due process rights afforded a person whose treatment at the California Rehabilitation Center (CRC) is being terminated (*People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622]) are equally applicable to a person whose treatment in the mentally disordered sex offender (MDSO) program is being terminated.

Appellant Antonio Francisco Reyes pled guilty to forcible rape and kidnaping. He was subsequently found to be a mentally disordered sex offender (MDSO) under the procedures of Welfare and Institutions Code section 6300 et seq.[1] and was committed to the Department of Mental Health. He was admitted to Atascadero State Hospital on April 21, 1977, and remained there for 18 months, during which time at least 8 staff evaluations were done. The first seven of these indicated that Reyes' amenability to treatment was under question but nonetheless recommended that he be retained and treated.

On October 23, 1978, appellant filed a petition under section 6327 seeking to have the superior court determine whether he was still in need of treatment as an MDSO or, alternatively, whether he was eligible for outpatient treatment under section 6327.1. As provided for in section 6327, the court ordered the department to file a report declaring whether Reyes fell within category (a) or category (b) of section 6325, that is, a report declaring whether Reyes was not or was still a danger to the health and safety of others. On the basis of a final staff evaluation the medical director of Atascadero reported that Reyes was still dangerous. He further concluded that Reyes was not amenable to

---

*Assigned by the Chairperson of the Judicial Council.

[1]Unless otherwise noted, hereinafter all statutory references are to the Welfare and Institutions Code.

further treatment and recommended that the court resume criminal proceedings.[2]

Reyes challenged the director's recommendation as an abuse of discretion. (§ 6325.2.)[3] He alleged, inter alia, that he had participated in the MDSO program, that the decision to exclude him was in retaliation for his having filed two habeas corpus motions and one motion under section 6327, and that incidents he was alleged to have perpetrated were greatly exaggerated in the report. He therefore asked for a new MDSO examination.

Reyes also challenged the manner in which the report was prepared, asserting that he did not have an opportunity to confront the writer of the report and cross-examine him before the director made his recommendation. While it appears that Reyes was given a copy of the report, it is not clear whether he was given a copy before or after it was lodged with the court. It is clear that he was not given an opportunity to comment upon the report or to rebut any of its statements before it was put in final form.

---

[2]After the repeal of former section 6326 it is no longer expressed that the focus of section 6325, subdivision (b), is unamenability. In pertinent part, section 6325 merely provides: "Whenever a person who is committed for an indeterminate period to the department for placement in a state hospital or to a county mental health director for placement in an appropriate facility (a) has been treated to such an extent that in the opinion of the superintendent or county mental health director the person will not benefit by further care and treatment in the hospital or facility and is not a danger to the health and safety of others, or (b) has not recovered, and in the opinion of the superintendent or county mental health director the person is still a danger to the health and safety of others, the superintendent or county mental health director shall file with the committing court a certification of his opinion under (a) or (b), as the case may be, including therein a report, diagnosis and recommendation concerning the person's future care, supervision or treatment and shall furnish a copy thereof to the county mental health director." But obviously the director at Atascadero cannot terminate an MDSO confinement simply because someone is still an MDSO. The courts have assumed that unamenability is the key determination under a subdivision (b) opinion. (See *People v. Sage* (1980) 26 Cal.3d 498, 501 [165 Cal.Rptr. 280, 611 P.2d 874]; *People v. Ramirez* (1979) 25 Cal.3d 260, 274-275 [158 Cal.Rptr. 316, 599 P.2d 622]; *People v. Saffell* (1979) 25 Cal.3d 223, 229-230 [157 Cal.Rptr. 897, 599 P.2d 92]; *People v. Compelleebee* (1979) 99 Cal.App.3d 296, 300 fn. 2 [160 Cal.Rptr. 233]; *People v. Oglesby* (1977) 67 Cal.App.3d 34, 37-39 [135 Cal.Rptr. 640].)

[3]Section 6325.2 provides in pertinent part: "When a person is returned to the committing court pursuant to Section 6325, either party may move for a new examination and hearing pursuant to Sections 6306 through 6318, inclusive, within five days of the person's arrival. The motion may be granted if the moving party shows by affidavit the existence of facts which establish that the opinion certified under subdivision (a) or (b) of Section 6325 was an abuse of discretion."

The superior court twice ruled that no abuse of discretion had occurred and sentenced Reyes to state prison. We hold that the procedure followed by the director violated Reyes' due process rights.

In *People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622], the Supreme Court held that under the due process clause of the California Constitution (art. I, § 7, subd. (a)) a person is entitled to have three basic interests satisfied before having his or her treatment for narcotic addiction involuntarily terminated: "(1) being informed of the nature of and reasons for the proposed action, (2) ensuring that the Director does not base his decision on erroneous or irrelevant facts, and (3) presenting his case for not being excluded." (*Id.*, at p. 274.) To effectuate those rights the court held that a person who was to be excluded from CRC was entitled to notice of the right to respond, an opportunity to make an oral presentation to a responsible official, and access to information upon which the director based his proposed decision. (*Id.*, at p. 275.)

A majority of the court agreed that these procedural safeguards were necessitated by the threatened deprivation of medical treatment, a benefit conferred by statute (*id.* at p. 272); the risk that, while the director's reasons might not constitute an abuse of discretion, they might be based on factual errors which, if pointed out, would alter the director's decision (*id.*, at p. 274); and most important, that the patient has a dignitary interest (the right to be "treated humanely and with dignity by one's government [citation]") in being informed why he or she is being excluded, and in presenting his or her side of the story. (*Id.*, at p. 275.) The court held that merely permitting an individual to attempt to prove to the superior court that an abuse of discretion had occurred was not sufficient to satisfy the interests involved.

Inasmuch as the Supreme Court has previously noted the "essential parallelism" of the MDSO and CRC programs and, on that basis, has applied the procedural protections of the one to the other (*People* v. *Thomas* (1977) 19 Cal.3d 630, 641 [139 Cal.Rptr. 594, 566 P.2d 228]), the Attorney General is hard pressed to draw a decisive distinction between the two with respect to the rights articulated in *Ramirez*. An MDSO patient faces at least as great a loss as does a CRC patient when the two are liable to be deprived of medical treatment. The dignitary interest is equally strong. The state alleges no greater administrative burden than that to be suffered under *Ramirez*. There is no allegation that the risk that the director of Atascadero could make a decision

based on an incomplete set of facts is any less than the risk that a CRC director could do so.

Finally, though the Attorney General attempts to distinguish *Ramirez* by asserting that a CRC exclusion is based on conduct, a contestable fact, whereas an MDSO exclusion is based on amenability to treatment, a matter of personality, this purported distinction ignores the acknowledgment in *Ramirez* that a CRC exclusion is essentially a subjective determination (*id.*, at p. 275), and also ignores the fact that in the instant case Reyes' determination was based to a significant extent on specified instances of conduct.

The specific facts of this case underscore the applicability of the *Ramirez* procedures. At his hearing under section 6325.2 Reyes pointed to a number of factors that might have had an impact on the director had appellant been given the opportunity to speak in his own behalf prior to exclusion. During a previous and lengthy prison term Reyes had become a highly skilled medical technician, had won the confidence of numerous people, including psychologists, and, on one occasion, heroically tried to save the life of a prison guard. Although he received mixed evaluations at Atascadero he did participate in group therapy sessions, and it was not until he filed for outpatient status that the staff recommendation changed from retain-and-treat to return-to-court. He claims he was threatened with a return to court if he pursued his remedies under section 6327 and habeas corpus. He further claims that several incidents alleged were grossly exaggerated; and all but one was over a year old at the time of the recommendation.

Regardless of the accuracy or inaccuracy of the foregoing statements, or their bearing, or lack thereof, on the director's decision, it is clear that the appellant has a reasonable belief that there is another side to his case. He has a right to make that presentation to the person whose decision will have a great impact on his future and he has the right to make that presentation before the decision is made. Moreover, rather than having to be content with an exchange of affidavits, frequently written in medical terminology, as is so often the case in a section 6325.2 hearing in the superior court, Reyes has the right to be heard personally at the administrative level, to be able to talk to a live person who actually makes the decision affecting his life and liberty.

Finally, there is a societal interest in the manner in which the government deals with its citizens, even when those citizens are convicted

felons, narcotic addicts, and mentally disordered sex offenders. The status of such persons subjects them neither to the loss of all constitutional rights (*Wolff* v. *McDonnell* (1974) 418 U.S. 539, 556 [41 L.Ed.2d 935, 950-951, 94 S.Ct. 2963]), nor to arbitrary action by government officials. "The guilty are almost always the first to suffer those hardships which are afterwards used as precedents against the innocent." (*People* v. *Manson* (1976) 61 Cal.App.3d 102, 198 [132 Cal.Rptr. 265], citing the dissenting opinion of Judge (now U.S. Supreme Court Justice) Stevens in *United States* v. *Barrett* (7th Cir. 1975) 505 F.2d 1091, 1114-1115.) The right to dignity and humane treatment from the government that is in Mr. Reyes today is the right of all people against whom their government acts. (*Ramirez, supra,* 25 Cal.3d at p. 275.)

We hold that before Reyes can constitutionally be terminated from the MDSO program he must at least be informed of the grounds for his proposed exclusion, be given notice of his right to respond and to respond in person before a responsible official and the opportunity to do so, and be given access to the information relied on by those who propose to terminate his treatment.

Since the termination of Reyes' MDSO commitment and the imposition of sentence occurred without the aforementioned procedures having been followed, both of those judicial acts must be vacated. Reyes' status is that of a person committed as an MDSO who must be returned to Atascadero State Hospital. Naturally, as long as appellant's interests in due process are protected, both the hospital director and the superior court are free to take such further action as appears appropriate under the law as applied to whatever facts appear upon a current evaluation of appellant.

The motion under section 6325.2 is granted. The orders resuming criminal proceedings and imposing sentence are vacated. Appellant is ordered delivered to the Atascadero State Hospital, there to be processed in a manner not inconsistent with the views expressed herein.

White, P. J., and Scott, J., concurred.