[Crim. No. 11509. Fourth Dist., Div. One. Sept. 30, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT RICK LEE, Defendant and Appellant.

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, and Jeffrey J. Stuetz for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and Beatrice W. Kemp, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, J.**—A jury convicted Robert Rick Lee of forcible rape (Pen. Code, § 261), first degree burglary (Pen. Code, § 459), robbery (Pen. Code, § 211), and forgery (Pen. Code, § 470). Thereafter, the court found him to be a mentally disordered sex offender (MDSO) who could benefit by treatment and committed him to Patton State Hospital.[1] Approximately 18 months later he was returned to the committing court

---

[1]Welfare and Institutions Code section 6300 defines a mentally disordered sex offender as any person who by reason of mental defect, or disorder, is predisposed to the commission of sexual offenses to such a degree that he is dangerous to the health and safety of others.

under Welfare and Institutions Code section 6325, subdivision (b)[2] which found him to be an MDSO who could not benefit from further treatment. The court, agreeing with the superintendent's opinion, denied defendant's request to initiate MDSO proceedings and sentenced him to prison for six years, eight months, computed as follows: Upper base term of five years for rape, one year consecutive sentence for robbery, eight month consecutive sentence for forgery with the burglary sentence to be served concurrently with the sentence for rape.

In his appeal from the judgment, defendant contends the trial court (1) erred in failing to comply with the provisions of section 6308 in not requiring oral testimony from the court-appointed psychiatrists depriving him of his right of confrontation and cross-examination and in not considering his amenability to treatment at a facility other than Patton; and (2) committed procedural errors at sentencing.

We agree only with one aspect of his sentencing argument. Penal Code section 654 precludes his punishment for the burglary conviction as the burglary was incidental to and a means of perpetrating the rape and robbery. Accordingly, we modify the judgment to stay execution of the burglary conviction until defendant's full service of the balance of his sentence on the other charges of which he was convicted. In all other respects we affirm the judgment.

*Factual and procedural background*

*Facts relating to defendant's convictions*

On August 26, 1977, Marcia T. arrived home around 3 a.m., changed into a nightgown and read in bed for about an hour. At about 4:15 a.m., she noticed defendant standing in the doorway of her bedroom. She ran to the window and screamed. Defendant grabbed her, they struggled and fell to the floor. Defendant repeatedly told her he had a gun and would shoot her. She stopped resisting.

Defendant then threw her on the bed and forcefully engaged in sexual intercourse. During intercourse, he asked if she had any money or jewelry. She told him where her purse was, which he took when he left the house. A medical examination of Marcia showed vaginal trauma from the incident.

---

[2]All references are to the Welfare and Institutions Code unless otherwise specified.

*Facts presented at the Welfare and Institutions Code
section 6325.2 hearing when defendant was returned
to court pursuant to Welfare and Institutions Code
section 6325, subdivision (b)*

Upon stipulation by counsel, the written reports from two court-appointed psychiatrists were received in evidence. They said defendant was not amenable to treatment and criminal proceedings should be reinstituted.

A psychiatric technician employed at Patton State Hospital testified defendant had benefited from treatment and was amenable to further treatment. The report of a defense psychiatrist suggesting defendant might be amenable to further treatment was also received in evidence.

*Sentencing hearing*

Defendant denied he was involved with drugs, one of the reasons he was returned to the superior court. He believed he was benefiting from treatment and was amenable to further treatment.

*A defendant is entitled to due process
safeguards before he may be found unamenable
to further treatment at a state hospital*

Defendant claims the denial of his right to confront and cross-examine the psychiatrists after he was returned from Patton to the superior court was prejudicial error requiring the reinstatement of MDSO proceedings. He relies on *People* v. *Townsend* (1971) 20 Cal.App.3d 919, 925-926 [98 Cal.Rptr. 8], and section 6308 which provides in part that "each psychiatrist or psychologist shall hear the testimony of all witnesses, and shall testify as to the result of his examination,. . .unless the person upon the advice of counsel waives the presence of the psychiatrist. . .and it is stipulated that their respective reports may be received in evidence."

Before reaching this issue, we think it necessary to first review the statutory procedure upon a defendant's return to court pursuant to section 6325, subdivision (b).

Section 6325.2 permits a defendant within five days after his arrival in the committing court to move for a new examination and a hearing

which will then be conducted in accordance with sections 6306-6318 where he is able to show by affidavit the existence of facts which establish the superintendent's opinion certifying him to the superior court was an abuse of discretion. If he fails to make such a motion or if the motion is denied, criminal proceedings are reinstituted and the case proceeds to probation and sentencing (§ 6325). If the motion is granted, sections 6306-6318 come into play, including defendant's right to a jury trial, in which he may be found not to be an MDSO or an MDSO who will either benefit or will not benefit from treatment. When he is found to be an MDSO who can benefit from treatment, his prior commitment is reinstated.

Recently, in *People v. Reyes* (1980) 107 Cal.App.3d 976 [166 Cal.Rptr. 127], this statutory procedure was examined in light of *People v. Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622]. *Ramirez* explained the nature of defendant's rights upon being terminated as a patient-inmate of the California Rehabilitation Center (CRC) where he had been committed for treatment as a narcotics addict, and held "[T]hat the due process safeguards required for protection of an individual's statutory interests must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty. [Citation.] This approach presumes that when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity." (*Id.*, at p. 268.) Accordingly, pursuant to those rights, a defendant, patient-inmate, must be given "an opportunity to respond to the grounds for the exclusion prior to the final exclusion decision. . . . [which means he] must be given [1] a statement of those grounds, [2] access to the information that the Director considered in reaching his decision, [3]. . . notice of the right to respond, [and the opportunity to exercise his right] to respond orally before a responsible official if he so chooses." (*Id.*, at p. 275.)

*People v. Reyes, supra,* 107 Cal.App.3d 976 held the due process rights afforded a person whose treatment at CRC is being terminated "are equally applicable to a person whose treatment in the mentally disordered sex offender (MDSO) program is being terminated." (*Id.*, at p. 978.)

Now, following *Reyes*, there must be compliance with the standards established in *Ramirez* before the superintendent may file his section 6325, subdivision (b) certificate with the committing court.

We have described the statutory procedure because we were unable to find defendant's section 6325.2 motion. We surmised the Superior Court of San Diego County might not literally comply with the legislative scheme and requested additional briefing. In response, defendant has now explained that in San Diego instead of a defendant being required to make and file a section 6325.2 motion, the superior court upon receipt of the section 6325, subdivision (b) certificate, automatically issues an order for his return. After he is transported to the county jail, his attorney is notified, a date is set for a new psychiatric examination by two court-appointed psychiatrists and a court hearing is scheduled. The purpose of the hearing is to determine whether the underlying facts for the superintendent's opinion in the section 6325, subdivision (b) certificate and the certificate itself are correct—is the returnee an MDSO who is unamenable to treatment?

*Defendant's constitutional rights were satisfied at his augmented section 6325.2 hearing; substantial evidence supports the court's independent determination defendant was no longer amenable to treatment*

The following occurred here:

June 7, 1979—Medical director certified under section 6325, subdivision (b) that defendant "will not benefit by further care and treatment in the hospital." (Original reflects copies mailed to defendant, his attorney of record and the district attorney.)

June 18, 1979—"Order For Return After Indeterminate Commitment" issued. (Original reflects a copy mailed to defendant's attorney.)

June 27, 1979—"Order For Transportation" for defendant's psychiatric examination on June 28 by two court-appointed psychiatrists and for delivery to court on July 5, 1979 for hearing.

July 5, 1979—Defendant appeared in court. Hearing continued to July 12, 1979.

July 9, 1979—Defendant's counsel obtained order for psychiatric examination of his client.

July 10, 1979—Defendant examined by psychiatrist pursuant to order of July 9, 1979.

July 11, 1979—Defendant's examining psychiatrist prepared report for defendant's lawyer (Evid. Code, § 1014). (The report indicates the psychiatrist reviewed (1) the psychiatric evaluation from another psychiatrist dated November 28, 1977, (2) probation officer's report for hearing on January 12, 1978, (3) forensic evaluations of court-appointed psychiatrist of January 18, 1978, and June 28, 1979, and (4) Patton State Hospital summary of June 5, 1979.)

July 12, 1979—Court hearing. (It was at this hearing that pursuant to stipulation the court-appointed psychiatrists' reports were received in evidence and where defendant called an independent witness to testify on his behalf.)

We trust the relevance of the foregoing procedural minutiae is apparent.

Defendant's categorical statement he was "accorded another MDSO hearing" upon his return to the superior court is inaccurate. Since the court's ruling occurred at the section 6325.2 stage, section 6308 is inapplicable. Only after the motion is granted do sections 6306-6318 apply. Further, although section 6316 allows the court to consider whether the MDSO can benefit by treatment in a state hospital, or other mental health facility, and the option to commit the person to the state hospital or *"to the county mental health director for placement in an appropriate public or private mental health facility"* (italics supplied) no such burden is placed on the superintendent under section 6325, subdivision (b). His opinion may be limited to his views on whether the MDSO is amenable to further treatment at the state hospital. Thus, in this appeal the questions posed are more correctly phrased as (1) whether there was sufficient admissible evidence to support the superintendent's opinion defendant would no longer benefit by further care and treatment in the hospital, and (2) whether the proceedings in which that determination was made met constitutional standards. We answer each of these questions in the affirmative.

■ In accordance with *Reyes*, defendant was entitled to "be informed of the grounds for his proposed exclusion [as an MDSO], be given notice of his right to respond and to respond in person before a responsible official and the opportunity to do so, and be given access to the information relied on by those who propose to terminate his treatment." (*People v. Reyes, supra*, 107 Cal.App.3d at p. 982.) ■ Here, defendant and his counsel received a copy of the certificate and attachment approximately five weeks before the July 12 hearing. The attachment consisted of a three-page case summary describing defendant's prognosis and the reasons for the physicians' recommendations. From the information contained in the summary and the date it was received, his counsel had sufficient data and adequate time to obtain whatever additional information was necessary to prepare for the hearing. Although the hearing itself was brief, there is nothing to indicate counsel was prevented from taking whatever time was reasonably necessary to explore the issues including, but not limited to the reasons for defendant's termination and the validity of the superintendent's opinion. Defendant did call one witness who testified favorably in his behalf, and had the opportunity to cross-examine the court-appointed psychiatrists, both of whom were at the hearing. There is no suggestion by appellate counsel that defendant's trial lawyer did not act as a reasonably diligent and conscientious attorney for his client during these proceedings.

Thus, the San Diego practice with its augmented section 6325.2 hearing satisfied the due process standards of *Ramirez*. This result, however, should not be construed as indicating our willingness to approve a general practice at state hospitals, if such were to be developed, which would deny to MDSO's being returned to the San Diego Superior Court their right to a *Reyes* hearing. Our holding rests on our conclusion that any error in failing to have a *Reyes* hearing was harmless beyond a reasonable doubt in light of defendant's subsequent hearing with counsel in the superior court where the court independently determined from the evidence that he was still an MDSO, but unamenable to further treatment at Patton State Hospital.

The court had the reports from the two psychiatrists stating defendant was not amenable to further treatment. Even the letter from defendant's own psychiatrist was not a ringing indorsement of defendant's amenability. There was substantial evidence for the court's conclusion.

*Sentencing*

*The court properly imposed the upper
prison term for the rape conviction*

Defendant contends the court erred in imposing the upper term for his rape conviction because it failed to consider his mental illness or alcoholism as mitigating factors and further erred by using the violence of the crime as an aggravating factor.

The court did not mention alcoholism at sentencing. Rule 409, California Rules of Court, provides that the appropriate standards ". . .shall be deemed to have been considered unless the record affirmatively reflects otherwise." We may presume alcoholism, to the extent relevant, was considered.

■ Defendant's reference to his MDSO status as a mitigating factor is also meritless. A person, having had the benefit of psychological care at a state hospital, but certified as not being amenable to further treatment and still a danger to the health and safety of others, is not automatically entitled to a lesser rather than a greater sentence. The provisions of sections 6300-6330 do not mitigate an offender's criminal conduct. (See *People* v. *Oglesby* (1977) 67 Cal.App.3d 34, 38 [135 Cal.Rptr. 640].)

■ The court explained the offense occurred at night in the victim's home, defendant's history indicated he was a danger to society, and the crime was violent and cruel. Although the last two elements—cruelty and violence—may be inherent in forcible rape itself and their use prohibited by California Rules of Court, rule 441(d), the other factors are sufficient to support the upper term. The sentence was not arbitrary. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].)

*Penal Code section 654 prohibits
punishment for the burglary conviction*

■ The court found the burglary was incidental to the rape and robbery. The sentence imposed for the burglary was to be served concurrently with the sentence for rape and robbery.

Penal Code section 654 bars multiple punishment for an indivisible course of conduct that violates more than one statute. (*People v. James* (1977) 19 Cal.3d 99, 119 [137 Cal.Rptr. 447, 561 P.2d 1135].) Concurrent sentences for crimes based on one act or indivisible transaction constitute multiple punishment. (*In re Wright* (1967) 65 Cal.2d 650 [56 Cal.Rptr. 110, 422 P.2d 998]; *People v. Craig* (1941) 17 Cal.2d 453 [110 P.2d 403]; *People v. Knowles* (1950) 35 Cal.2d 175, 189 [217 P.2d 1].) The appropriate procedure is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned. (*In re Wright, supra,* 65 Cal.2d 650; *People v. Niles* (1964) 227 Cal.App.2d 749, 756 [39 Cal.Rptr. 11]; Cal. Rules of Court, rule 449.)

The determinate sentencing law (DSL) does not preclude the possibility that a defendant will be subjected to double punishment when concurrent terms are imposed. If the Legislature had intended to repeal the judicial interpretation of Penal Code section 654, it would have done so expressly. Moreover, the Legislature made sentencing for multiple convictions under Penal Code section 1170.1 "subject to section 654." Similarly, the official abstract of judgment form specifically has a "Count Stayed PC § 654" section.

Adverse consequences still flow from a concurrent sentence even though now a defendant's sentence is reviewed by the Board of Prison Terms to determine whether the sentence is disparate. (Pen. Code, § 1170, subd. (f).) A concurrent sentence may indicate more criminal culpability than a stayed section 654 sentence, and, can possibly adversely affect any opportunity to have a motion made to recall the sentence. ▪ "[I]t is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.]...If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].) The burglary sentence must be stayed.

*The sentences for rape and robbery do not constitute multiple punishment*

The lower court found the robbery was a separate and independent crime and imposed a consecutive one-year term. Defendant says Penal Code section 654 also applies to prohibit multiple punishment for both

the rape and the robbery as the rape was incidental to and a means of perpetrating the robbery.

■ The question of whether the acts of which defendant has been convicted constitute an indivisible course of conduct is primarily a factual determination, made by the trial court on the basis of its findings concerning the defendant's intent and objective in committing the acts. This determination will not be reversed on appeal unless unsupported by the evidence presented at trial. (*People v. Ferguson* (1969) 1 Cal.App. 3d 68, 74-75 [81 Cal.Rptr. 418].)

Defendant says he entertained the dual intent to rape and rob when he entered the house. The court, however, concluded otherwise in deciding the objective of the rape was sexual gratification while the objective of the robbery was to take the victim's property. There is sufficient evidence to support the finding that defendant's intent to rob was formed after he started to rape the victim. (See *People v. Ramirez* (1979) 93 Cal.App.3d 714, 729 [156 Cal.Rptr. 94].) The court also did not abuse its discretion in making the robbery sentence consecutive to the rape sentence.

*Disposition*

The judgment is modified to stay execution of the burglary sentence until defendant fully serves the balance of his sentence on the other charges of which he was convicted. Except as modified, the judgment is affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied October 20, 1980, and appellant's petition for a hearing by the Supreme Court was denied December 3, 1980. Newman, J., was of the opinion that the petition should be granted.