[Crim. No. 11817. Fourth Dist., Div. One. July 10, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH JOHN GINESE, Defendant and Appellant.

470

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Jeffrey J. Stuetz, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington, A. Wells Petersen and Steven H. Zeigen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COLOGNE, Acting P. J.**—A complaint charged defendant Joseph John Ginese with 11 counts of molesting children under 14 years of age (Pen. Code, § 288), four counts of sodomy with children under 14 years old and more than 10 years younger than he (Pen. Code, § 286, subd. (c)) and three counts of oral copulation with children under 14 years old and more than 10 years younger than he (Pen. Code, § 288a, subd. (c)). On May 1, 1979, by a plea bargain in municipal court, Ginese pleaded guilty to two counts of molesting boys aged 9 and 11.

Mentally disordered sex offender (MDSO) proceedings were undertaken and on June 11, 1979, the superior court committed Ginese to Patton State Hospital as an MDSO. On February 15, 1980, the hospital's medical director certified Ginese back to superior court as not amenable to further treatment and still a danger to the health and safety of others (former Welf. & Inst. Code, § 6325; Stats. 1978, ch. 1291; see § 6325 as amended by Stats. 1980, ch. 547). Ginese was examined by psychiatrists who recommended his "[r]eturn to Court, not amenable for further treatment." On March 31, 1980, the superior court found Ginese is still an MDSO not amenable to further treatment and still a danger to others. At the reinstated criminal proceedings on April 22, 1980, Ginese was sentenced to the upper term of seven years on one count and to a consecutive term of one year and eight months on the other. Claiming error in the procedure terminating his MDSO status and in the sentencing, Ginese appeals.

### TERMINATION OF MDSO STATUS

█ Ginese contends he is entitled to have his MDSO commitment reinstated because of the arbitrary nature of the San Diego Superior Court procedures used in connection with the state hospital superintendent's certification and Ginese's return to court under sections 6325 and 6325.2 of the Welfare and Institutions Code. Ginese requests we reex-

amine and disapprove our September 30, 1980, decision in *People* v. *Lee* (1980) 110 Cal.App.3d 774 [168 Cal.Rptr. 231] (hg. den. Dec. 3, 1980), upholding the San Diego Superior Court procedure. That procedure is described in *Lee* at page 781, as follows: "[I]n San Diego instead of a defendant being required to make and file a section 6325.2 motion, the superior court upon receipt of the section 6325, subdivision (b) certificate, automatically issues an order for his return. After he is transported to the county jail, his attorney is notified, a date is set for a new psychiatric examination by two court-appointed psychiatrists and a court hearing is scheduled. The purpose of the hearing is to determine whether the underlying facts for the superintendent's opinion in the section 6325, subdivision (b) certificate and the certificate itself are correct—is the returnee an MDSO who is unamenable to treatment?"

By contrast, the motion procedure of Welfare and Institutions Code section 6325.2 is summarized in *Lee* as follows: "Section 6325.2 permits a defendant within five days after his arrival in the committing court to move for a new examination and a hearing which will then be conducted in accordance with sections 6306-6318 where he is able to show by affidavit the existence of facts which establish the superintendent's opinion certifying him to the superior court was an abuse of discretion. If he fails to make such a motion or if the motion is denied, criminal proceedings are reinstituted and the case proceeds to probation and sentencing (§ 6325). If the motion is granted, sections 6306-6318 come into play, including defendant's right to a jury trial, in which he may be found not to be an MDSO or an MDSO who will either benefit or will not benefit from treatment. When he is found to be an MDSO who can benefit from treatment, his prior commitment is reinstated." (*People* v. *Lee, supra*, 110 Cal.App.3d 774, at pp. 779-780.)

This court considered the San Diego MDSO return procedure in light of the due process standards held applicable in *People* v. *Reyes* (1980) 107 Cal.App.3d 976, at page 978 [166 Cal.Rptr. 127] (see also *People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622]). Taking note of the fact such a defendant in San Diego receives a hearing with counsel in the superior court where the court independently determines from the evidence that he is still an MDSO, but unamenable to further treatment at the hospital, we concluded the San Diego practice with its augmented Welfare and Institutions Code section 6325.2 hearing satisfies those due process standards (110 Cal.App.3d at p. 783). Ginese presents no basis on which we can reach a different conclusion. Contrary to his unsupported assertion the San Diego procedure

is arbitrary, we find it reasonably conceived and in furtherance of efficient and constitutional administration of justice. On the record before us, moreover, there is no showing of a lack of uniformity in the application of the San Diego procedure. Ginese's argument in this respect thus fails. We conclude Ginese received the benefits of the hearing described in *Lee* and was thus accorded his due process rights.

Ginese contends a standard of proof beyond a reasonable doubt should be applied at the hearing. The contention is without merit.

Section 6325.2 provides when a person is returned to the committing court pursuant to the recommendation of the medical director, either party may move for a new examination and hearing for his recommitment to the state hospital.[1] The granting of this motion is a prerequisite to the hearing which follows. The law thus contemplates a two-step process to achieve the recommitment, i.e., first the granting of the motion to have a hearing, and second, after the hearing a finding the person remains a mentally disordered sex offender who could benefit by treatment in the state hospital or other mental health facility. In this second phase, the defendant is accorded all the rights allowed in the original commitment.

The San Diego procedure follows this same format except that it assumes the defendant or the People would want the motion in every case and proceeds on the assumption such a motion has been made. To augment the record in this motion proceeding, a new examination by court-appointed psychiatrists is ordered to verify or negate the medical director's opinion. This phase of the proceedings in San Diego is not the full-scale hearing contemplated as the second phase of a recommitment procedure but only for the purposes of the first phase, i.e., the motion to

---

[1]Section 6325.2 of Welfare and Institutions Code reads: "When a person is returned to the committing court pursuant to Section 6325, either party may move for a new examination and hearing pursuant to Sections 6306 through 6318, inclusive, within five days of the person's arrival. The motion may be granted if the moving party shows by affidavit the existence of facts which establish that the opinion certified under subdivision (a) or (b) of Section 6325 was an abuse of discretion. Such hearing shall be set to commence within 30 days of the person's return to court. If the opinion certified was under subdivision (a) of Section 6325, and a new hearing is granted upon motion of the people, the person shall be entitled to be admitted to bail or release on his own recognizance in the manner provided by law for criminal cases. If, at the conclusion of a hearing pursuant to this section, the person is found to remain a mentally disordered sex offender who could benefit by treatment in the state hospital or other mental health facility, the court may direct that the previous order of commitment remain in full force and effect."

determine whether the medical director's opinion is an abuse of discretion. In substance, this is what was said in *People* v. *Lee, supra*, 110 Cal.App.3d 774, noting the purpose of the hearing was to determine the correctness of the superintendent's opinion. Having ruled the underlying facts of the director's opinion were accurate, the court effectively denied the motion for a full hearing.

In *People* v. *Burnick* (1975) 14 Cal.3d 306, [121 Cal.Rptr. 488, 535 P.2d 352] the Supreme Court held (at p. 332): "[T]he standard of proof beyond a reasonable doubt is required in mentally disordered sex offender proceedings by the due process clauses of article I, section 7, subdivision (a), of the California Constitution and the Fourteenth Amendment to the United States Constitution. Although the present case challenges an order of commitment made after a trial of the issue pursuant to section 6321, the same rule manifestly applies to any stage of the proceedings in which the person is committed or recommitted to the State Department of Health pursuant to a finding that he is a mentally disordered sex offender (e.g., §§ 6316, 6326, 6327)...."

The court in *Burnick* looked to the drastic impairment of one's liberty, then an indefinite term, and of one's reputation in reaching its conclusion the high standard of proof applied (14 Cal.3d at p. 310). Burnick himself had been found to be an MDSO, but amenable to treatment, and he was committed to the state hospital.

In the companion case of *People* v. *Feagley* (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373], the court held the high standard of proof applied also to one involved in a proceeding in which he was found to be an MDSO, but not amenable to treatment, and committed to prison as such. Stating its conclusion in this regard, the court said (14 Cal.3d at p. 347): "The rationale of *Burnick* therefore applies a fortiori to the case at bar: the dual consequences of curtailment of liberty and moral stigma which attached to Feagley's commitment were so serious that he was entitled to the due process safeguard of proof beyond a reasonable doubt of each of the two operative facts resulting in his confinement in the California Men's Colony, i.e., that he was a mentally disordered sex offender and that he could not 'benefit by treatment in a state hospital.'"

In 1976, following the court's opinion in these two cases, the Legislature amended section 6318 dealing with trial of the question whether

one is an MDSO to require the judge and the jury hearing the issue to answer the question: "Are you convinced beyond a reasonable doubt the defendant is a mentally disordered sex offender?" It is significant the Legislature did not require that high standard of proof for the ruling on the motion to have a hearing on the issue of the director's abuse of discretion, but in the same section (§ 6325.2) did provide at the hearing on the recommitment that the high standard of proof (§ 6318) was required. The Legislature clearly intended a distinction.

Logic supports this legislative distinction. While some persons might prefer the medical facility to prison, the more common view would be the medical facility does offer the likelihood of longer, even lifetime, impairment of liberty and a more onerous moral stigma to the incarceration. Under these circumstances, the burden of proof to commit a person to the medical facility should be the highest, while release should be on an easier basis.

The Legislature provided no standard for the burden of proof in the instance of the motion, so the matter is controlled by the general provisions of section 115 of the Evidence Code, which declares in relevant part, "[E]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence" (see also *People v. Burnick* (1975) 14 Cal.3d 306, 314 [121 Cal.Rptr. 488, 535 P.2d 352]). The standard of proof for the granting of this motion having been not otherwise established by law, or calling for loss of liberty or carrying with it the likelihood of an onerous moral stigma more than the individual was then enduring, the standard of proof that must be applied is proof by a preponderance of the evidence.

Since there is nothing in the record to indicate what standard the court applied, but the applicable standard is the preponderance standard, the court's ruling would be upheld in any case. There would be no prejudice. The order reinstating criminal proceedings was proper.

### SENTENCING

██ Ginese contends the court erred in using an element of the offense, i.e., the crime involved minors under the age of 14, to impose the upper term for a violation of Penal Code section 288, child molesting. At sentencing, the court denied probation, noted certain circumstances in mitigation, then began discussing circumstances in aggravation as

follows: "I find under 421(a)(3) that the victim was particularly vulnerable—the victims, the two from Counts VII and IX. It's to be noted of record here that they were specifically two different boys, and right on the face of the change of plea form in this case, it says that one boy . . . age nine, and the other boy . . . age eleven.

"Under 421(a)(5), the defendant induced others to participate in the commission of the crime. He occupied a position of dominance and leadership as compared to youth of that age. The defendant's activities showed that there was some planning on his part. As a matter of fact, there was some representation of his working with the Boys Club of America which then put him in contact with a group of boys, but the fact is that it indicates other than spur-of-the-moment activity, so it shows some planning to even get into this activity to me. *Probably one of the most serious considerations under 421(a)(9) is the defendant did use and involve minors in the commission of this crime or the two crimes.*" (Italics added.)[2]

Rule 441(d) proscribes a trial court's use of a fact which is an element of the crime to impose the upper term. An age range factor is an element of the offense of committing "any lewd or lascivious act . . . upon or with the body . . . of a child under the age of 14 years" (Pen. Code, § 288; *People* v. *Nothnagel* (1960) 187 Cal.App.2d 219, 225 [9 Cal.Rptr. 519]). Moreover, the case of *People* v. *Flores* (1981) 115 Cal.App.3d 924 [171 Cal.Rptr. 777], must be taken into account in considering the propriety of the trial court's references to the specific ages of the victims and the exact language of rule 421(a)(9). In *People* v. *Flores, supra,* the defendant stood convicted of violating Penal Code section 288a, subdivision (b)(2), in that being over the age of 21 years, he orally copulated a person less than 16 years old. At sentencing, the trial court said "the victim was particularly vulnerable; the victim was a minor" (*id.* at p. 926). The Court of Appeal looked at the scheme of law pertaining to punishments for oral copulation which, it said, made it clear the Legislature already determined that all persons of specified ages are particularly vulnerable by reason of their age alone and, consequently, the Legislature had already provided increased punishment for offenses committed against them (Pen. Code, § 288a, by person over 21

---

[2] The trial court, of course, is referring to the California Rules of Court, as do we in this opinion.

Rule 421(a)(9) includes as a circumstance in aggravation the fact relating to the crime that the "defendant used or involved minors in the commission of the crime."

with person under 16 punishable only as felony—by 16 months, or 2 or 3 years; with person under 14 and more than 10 years younger, punishable by 3, 6 or 8 years). Thus, the court concluded use of the factor of minority tied to vulnerability was error (*id.* at p. 927). In doing so, the court observed: "While there undoubtedly may be situations in which a minor between the ages of 14 and 16 years could appropriately be determined 'particularly vulnerable,' such as when he or she is mentally deficient, physically handicapped, rendered intoxicated, etc., no such considerations were present here." (*People* v. *Flores, supra*, 115 Cal. App.3d 924, 927.)

We might add to the listed potential factors making a victim of an "age range offense" particularly vulnerable circumstances such as supervision or control a defendant has over the victim, including perhaps consideration of the time or location of the offense giving rise to a vulnerability through isolation, temporary dependency or fear of factors other than the defendant himself. Extreme youth within the given age range might also be viewed as making a victim "particularly vulnerable" in relation to others within the age range, but in those instances dependency or fear is invariably also involved and should be stated as the basis for the vulnerability. As in *Flores*, however, none of these types of factors or circumstances is cited by the court in Ginese's case.

The *Flores* rule applies to this case. We cannot accept the People's argument that the trial court's reference to the victims' specific ages, rather than merely to their minority as in *Flores*, distinguishes Ginese's case. There is nothing in the specification of the victims' ages, without more, to indicate the trial court was doing more than merely referring to punishable elements of the crime already incorporated into the child molesting statute. Moreover, as the above underscored quotation shows, the trial court did refer to the victims' minority alone. This brings the case closer to the facts of *Flores* so as to make it indistinguishable.

The fact the trial court's reference to use or involvement of minors virtually quoted the language of rule 421(a)(9), which authorizes this as a factor in aggravation, does not overcome its contravention of rule 441(d) proscribing use of an element of the crime to aggravate the sentence. The trial court erred in using the victim's minority to support an aggravated term.

■ Ginese contends also the trial court erred in imposing consecutive sentences based upon the following statement of reasons: "The

Court is aware and specifically states on the record that this Court has no intention to provide dual use of facts. The Court is well aware of 1170.1 of the Penal Code and is well aware of the cases. Under rule 425, there are criteria affecting concurrent or consecutive sentences, but the Court then reiterates back to rule 408. 408 gives Courts, if they state on the record what their discretion is based upon, the discretion to consider additional factors other than to place blind, slavish reliance in a ritualistic form only to a list that may sometimes appear rather impersonal and hard to tailor to a particular case.

"*     *     *     *     *     *     *     *     *     *     *     *     *     *     *

"The next question under 425(a)(3), again, these crimes being committed at separate places with separate people, the question in the first probation report that the Probation Department took the position that these were committed so close in time and at the same place as to possibly being the same basis of one form of aberrant behavior. I again rely on that *Perez* case which holds in sexual cases, in sexual offenses, particularly serious ones—in *Perez*, of course, it was a rape case—that consecutive terms may well apply, particularly in this case where you have the additional aggravating factor not present in *Perez*, as I recall *Perez*, and that is that you have a separate victim. In addition to that, I look back to the sentencing objectives in 410, and then I look at 408 that allows me to by-pass these rules when it is appropriate, and I could state for the record, I rarely by-pass them and never mention anything that is not contained within them. The Court has read all of this material, and I have considered all of this material, and I feel that to protect society to the maximum under rule 410(a) and to punish the defendant to the maximum for what he has done to young, innocent children, that I am considering those two factors in addition to rule 425 to impose the consecutive sentence.

"Now, if an Appellate Court wishes to find that I cannot do that, they will have to invalidate rule 408 because I am doing that, so the Court finds for those reasons, consecutive sentences will be imposed in that Count IX will be consecutive to Count VII."[3]

---

[3]The rules cited by the trial court read, in part: "408. (a) The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. Any such additional criteria shall be stated on the record by the sentencing judge.

"410. General objectives of sentencing include: [¶] (a) Protecting society. [¶] (b) Punishing the defendant.

"425. Criteria affecting the decision to impose consecutive rather than concurrent

Rule 441(c) says a "fact used to enhance the defendant's prison sentence may not be used to impose the upper term." So also does Penal Code section 1170, subdivision (b), provide in part: "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under Section . . . 1170.1."[4] The statement of the court here that it does not intend to use factors already used for aggravation followed by reference to separate victims, protection of society and a desire to maximize the punishment certainly states factors justifying the consecutive sentences. The reference to children and youth only described the nature of the offense involved and was not a reuse of a factor used to impose the upper term. The statement made by the court for the record here complies with rule 408 and provides adequate reasons for imposing consecutive sentence.

■ Finally, Ginese contends there is a "strong possibility" the 16 dismissed counts were considered by the court in imposing the upper term, thus violating *People* v. *Harvey* (1979) 25 Cal.3d 754, at pages 757 to 759 [159 Cal.Rptr. 696, 602 P.2d 396]. As a factual basis for the assertion, Ginese relies on the above quoted portion of the court's statement of reasons referring to planning activities on Ginese's part in that he had represented he worked for a boys' club which permitted him to contact a group of boys. In this connection, he notes the probation report disclosing this information does not refer to the specific two counts to which he pleaded guilty.

This is an insufficient showing of error. His conclusion is based on speculation and we cannot find error on this basis.

■ In light of the sentencing error in the trial court's use of the victims' minority for aggravation, we must remand for reweighing the factors in mitigation against those remaining or newly found in aggravation, and for resentencing accordingly (*People* v. *Flores, supra,* 115 Cal.App.3d 924, 927, 929).

---

sentences include: [¶] (a) Facts relating to the crimes, including whether or not: . . . [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior."

[4]Penal Code section 1170.1, among other things, deals with enhancement by consecutive sentencing (see rule 405(b) and (c); *People* v. *Whitehouse* (1980) 112 Cal.App.3d 479, 484 [169 Cal.Rptr. 199]).

The sentence imposed is vacated and the matter is remanded for re-sentencing consistent with the views expressed in this opinion. In all other respects, the judgment is affirmed.

Wiener, J., and Work, J., concurred.