Filed 1/12/15  P. v. Sawyer CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064752 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN305905) |
| FRANKLIN SAWYER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. Mills, Judge.  Affirmed as modified and remanded with directions.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Julie L. Garland, Assistant Attorneys General, A. Natasha Cortina and Christine Levingston Bergman, DeputyAttorneys General.

A jury convicted Franklin Sawyer of making a criminal threat (Pen. Code,[1] § 422; count 1), false imprisonment by violence or menace (§§ 236/237, subd. (a); count 3), evading an officer with reckless driving (Veh. Code, § 2800.2, subd. (a); count 4), and unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a); count 5).

In a bifurcated hearing, Sawyer admitted he suffered two serious felony priors, two strike priors, and one prison prior. The court dismissed one of the strike priors pursuant to section 1385. It sentenced Sawyer to a total of 20 years in prison as follows: a principal term of six years for count 4, consecutive terms of 16 months on the remaining counts, and 10 years for the serious felony priors. Further, it imposed but stayed the sentence on the prison prior.

Relying on section 654, Sawyer contends he committed false imprisonment and criminal threat under a single intent and therefore the sentence on one of those crimes should be stayed. Further, Sawyer contends the court erred by staying, rather than striking, the prison prior. We conclude Sawyer had the same objective in committing both crimes. Accordingly, we affirm the judgment as modified, and remand with directions.

FACTUAL AND PROCEDURAL HISTORY

On May 18, 2012, Rosa Torres left her car keys in the ignition and stepped out of her car to throw a bag of garbage in a dumpster. Sawyer took Torres's car without her permission. Oceanside Police Department Officer Karina Pina responded to a stolen car

---

[1] All statutory references are to the Penal Code unless otherwise noted.

2

report and immediately saw a car matching the description of Torres's car. Officer Pina turned on her overhead lights and siren. Sawyer drove the vehicle fast and Officer Pina gave chase. Sawyer maneuvered around cars and went into the opposite lane to pass a vehicle. Officer Pina accelerated to 70 miles per hour, but could not catch up with Sawyer until he made a wide turn and crashed. Sawyer ran towards a nearby house and jumped the fence. Officer Pina called for backup police to set up a perimeter around the area.

Debbie Osterloh, a resident of a senior community in Oceanside, noticed her dog lunging at a closed closet door in her room. Osterloh tried to calm her dog by opening one closet door. Sawyer jumped out of the other closet door, put both of his hands around Osterloh's neck for approximately a minute and said, "If you yell out, I'll kill you." Sawyer let go of Osterloh and told her to sit down on the couch. Sawyer asked if she believed in God and said, "I need your help." Osterloh was afraid and confused and did not know if Sawyer had a weapon. Sawyer again asked for help and Osterloh told him to leave. Osterloh saw that police officers were outside her windows. Sawyer put his hands on her breasts and tilted her below the windowsill. He covered her mouth with one of his hands and put his other hand on the back of her neck. He again threatened her: "If you say anything or yell out, I will kill you." Osterloh believed him. Sawyer held her down for approximately five more minutes.

While police knocked on the front door, Osterloh told Sawyer that all of the police were in the front yard and he should leave before they went to the backyard. Sawyer left through the garage, and was apprehended by police. Paramedics treated Osterloh at her

3

residence but she elected not to go to the hospital that day. At trial, Osterloh testified the incident lasted approximately 15 minutes.

The probation officer recommended that section 654 applied because: "[t]he conduct involved in counts three, four and five all occurred on the same occasion, or crime spree by the defendant. Based on this, the probation officer has recommended that the terms in each of those counts be sentenced to be served concurrently with the term imposed in count one." At sentencing, the court rejected that recommendation, ruling: "[T]hese are not [section] 654 charges. They're flat out not. It's not even a good argument legally. It's a good argument maybe morally and strategically, but it's not a good legal argument."

DISCUSSION

I.

*Section 654 Bars Multiple Punishment on Counts 1 and 3*

Sawyer contends the count 1 criminal threat facilitated the count 3 false imprisonment and the two crimes shared the same objective: to prevent Osterloh from alerting the police.

*Applicable Law*

Section 654, subdivision (a), states: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 "precludes multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v.*

4

*Deloza* (1998) 18 Cal.4th 585, 591.) If a defendant suffers two convictions and punishment for one is barred by section 654, "that section requires the sentence for one conviction be imposed, and the other imposed and then stayed." (*Deloza*, *supra*, 18 Cal.4th at pp. 591-592.)

Whether a course of conduct is indivisible for purposes of section 654 depends on the *intent and objective* of the defendant, not the temporal proximity of the offenses. (*People v. Hicks* (1993) 6 Cal.4th 784, 789; *People v. Harrison* (1989) 48 Cal.3d 321, 335.) If all the criminal acts were incident to one objective, then punishment may be imposed only as to one of the offenses committed. (*People v. Beamon* (1973) 8 Cal.3d 625, 636-639 (*Beamon*).) If there were multiple objectives, punishment may be imposed for each crime even if the objectives were furthered by " 'common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Vidaurri* (1980) 103 Cal.App.3d 450, 465.)

Whether section 654 applies in a given case is a question of fact for the court, which is vested with broad latitude in its determination. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) We review the court's findings in the light most favorable to the judgment and will not reverse them on appeal if there is any substantial evidence to support them. (*Ibid.*) Evidence is substantial where it is reasonable, credible and of solid value from which a reasonable trier of fact could make the finding in question. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) We presume the existence of every fact in support of the court's conclusion that the trier of fact could reasonably deduce from the evidence. (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 271.)

5

"[T]here can be no universal construction which directs the proper application of section 654 in every instance." (*Beamon*, *supra*, 8 Cal.3d at p. 636.) "Notwithstanding the apparent simplicity of its language, the applicability of section 654 in a particular case often involves a difficult analytical problem. [Citation.] Each case must be determined on the basis of its own facts, and general principles applicable to one type of case may not apply to another." (*In re Adams* (1975) 14 Cal.3d 629, 633; see also 3 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Punishment, § 248, pp. 397-399.)

Under section 237, an element of felony false imprisonment is the defendant's "use of violence, menace, fraud, or deceit." The court instructed the jury regarding the elements of that offense: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant intentionally restrained, confined, or detained someone or caused that person to be restrained, confined, or detained by violence or menace; AND 2. The defendant made the other person stay or go somewhere against that person's will. [¶] *Violence* means using physical force that is greater than the force reasonably necessary to restrain someone. *Menace* means a verbal or physical threat of harm. The threat of harm may be express or implied."

Although the People also charged Sawyer with committing the lesser included offense of misdemeanor false imprisonment, and the court instructed the jury on that

charge—which did not require the use of force, violence or menace—the jury elected not to convict Sawyer of the lesser offense.[2]

*Analysis*

Giving all deference to the trial court's findings and in light of the facts of the case, we conclude section 654 bars multiple punishment on counts 1 and 3.

The record shows Sawyer's threat and his false imprisonment of Osterloh were part of an indivisible course of conduct lasting the entire 15 minutes from the time Sawyer was discovered in the residence until he left the residence. Osterloh testified Sawyer grabbed and threatened her almost immediately upon his exiting the closet. Sawyer threatened to kill Osterloh, thus preventing her from alerting the authorities regarding his presence. Under these circumstances, section 654 bars double punishment for a course of conduct constituting one indivisible transaction with one criminal objective. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1216 (*Latimer*); *People v. Lee* (1980) 110 Cal.App.3d 774, 785.) The purpose of the protection against multiple punishment is to ensure that the defendant's punishment will be commensurate with his criminal liability. (*Neal*, *supra*, 55 Cal.2d at p. 20.)

---

[2] The court instructed the jury regarding misdemeanor false imprisonment: "The defendant is charged as a lesser included crime in Count Three with false imprisonment in violation of Penal Code section 237 [subdivision] (a). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant intentionally restrained, detained, or confined a person; AND 2. The defendant's act made that person stay or go somewhere against that person's will. [¶] An act is done *against a person's will* if that person does not consent to the act. In order to *consent*, a person must act freely and voluntarily and know the nature of the act. [¶] False imprisonment does not require that the person restrained or detained be confined in jail or prison."

In *Latimer*, *supra*, 5 Cal.4th at p. 1206, the defendant kidnapped the victim, drove her to a nearby desert area, and raped her twice. The defendant and the victim were running errands when the defendant drove to an undeveloped area of a nearby desert. The defendant assaulted the victim and forced her to undress. He raped her and forced her to orally copulate him. Afterwards, the defendant and the victim got dressed and then the defendant drove 50 to 75 yards further into the desert and raped her again. The defendant pleaded nolo contendere to one count of kidnapping and two counts of forcible rape. (*Ibid.*) On appeal, he contended his sentence for the kidnapping conviction should be stayed under section 654. The Supreme Court agreed: "Although the kidnapping and the rapes were separate acts, the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes." (*Latimer*, at p. 1216.) In this case, Sawyer was fleeing the police and attempted to prevent Osterloh from alerting the police of his presence. To accomplish this, Sawyer threatened her and held her down. Just as in *Latimer*, there is nothing in the record to indicate Sawyer had any intent behind the criminal threat beyond facilitating his imprisonment of Osterloh. In this case there is an even stronger basis to apply section 654 than in *Latimer*, where the defendant committed separate acts of rape in separate places.

Citing *People v. Nguyen* (1988) 204 Cal.App.3d 181, the People argue Sawyer's gratuitous violence supports imposing separate punishment. *Nguyen* is distinguishable on its facts. There, the defendant and his partner robbed a market when the defendant's partner took the store clerk to the backroom. (*Id*. at p. 190.) While the defendant was at the store's till, his partner took the store clerk's valuables, and then forced him to lie on

the floor in an attempt to forestall any resistance.  Once the store clerk was on the ground, the defendant's partner shot him.  (*Ibid.*)  The court concluded that under section 654, the crimes of robbery and attempted murder should be sentenced separately:  " '[A]t some point the means to achieve an objective may become so extreme they can no longer be termed 'incidental' and must be considered to express a different and a more sinister goal than mere commission of the original crime.  . . .  [¶]  . . .  [¶]  . . .  [S]ection [654] cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense.' "  (*Nguyen*, at p. 191.)  *Nguyen* is distinguishable because there the defendant's partner had already put the store clerk in a position to detain him and accomplish the robbery.  Shooting the store clerk was unnecessary to accomplish the defendant's objective.  The attempted murder was not incidental to the robbery.

By contrast, here, Sawyer's criminal threat and his false imprisonment were committed at the same time and with the single objective of evading police capture.  Further, the prosecutor argued that Sawyer's use of force, violence or menace provided an element for his false imprisonment conviction.  Therefore, he cannot be separately punished for that use of violence or menace, which the People now describe as gratuitous.[3]

---

[3]    In arguing for a conviction on the greater offense, the prosecutor stated: "[Osterloh] didn't want to be in this room with [Sawyer]; didn't want to be forced on that bed and forced to sit there with this stranger in her house threatening to kill her who had strangled her, pulled her on the bed, grabbing her by the arm, and was pushing her down on the bed, holding her by the neck.  [¶]  So all of that is done with violence.  I don't think

Nor are we persuaded by the People's reliance on *People v. Trotter* (1992) 7 Cal.App.4th 363, in which the Court of Appeal concluded there was no section 654 error in the imposition of consecutive sentences for two assaults. (*Id.* at p. 368.) In *Trotter*, the defendant, while fleeing in a taxi from a police officer, fired three shots at the police car pursuing him. The first two shots were a minute apart, while the third came moments after the second. (*Id.* at pp. 365-366.) The appellate court held the trial court did not err by separately punishing the defendant for the first two shots, and not the third. Each successive shot by the defendant made his conduct more egregious, and each shot posed a "separate and distinct risk" to the officer and the freeway drivers. (*Id.* at p. 368.) It explained further that "this was not a case where only one volitional act gave rise to multiple offenses. Each shot required a separate trigger pull." (*Ibid.*) Unlike in *Trotter*, there is no evidence Sawyer's crimes became more "egregious" as they were committed or that they posed "separate and distinct risk[s]."

II.

*One-Year Prison Prior*

The People concede, and we agree, that under section 667.5, the trial court erred by staying, rather than striking, the one-year prison enhancement under section 667.5 subdivision (b) because it served as the basis for one of the serious felony priors under section 667, subdivision (a)(1), and the latter was a greater sentence. Accordingly, the

---

there's any dispute over how [Sawyer] falsely imprisoned [Osterloh] in that room and on that bed. He used violence and he used menace to keep her in there."

10

one-year prison enhancement must be stricken.  (*People v. Perez* (2011) 195 Cal.App.4th 801, 805, citing *People v. Jones* (1993) 5 Cal.4th 1142, 1150-1153.)

DISPOSITION

We stay the sentence on making a criminal threat (Pen. Code, § 422; count 1) pursuant to Penal Code section 654, subdivision (a), and strike the Penal Code, section 667.5 subdivision (b) one-year prison enhancement; as so modified, the judgment is affirmed.  The superior court is directed to prepare an amended abstract of judgment reflecting these modifications and forward a certified copy to the Department of Corrections and Rehabilitation.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.