[Crim. No. 43032. Second Dist., Div. Seven. Apr. 20, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT REYNOLDS, Defendant and Appellant.

**COUNSEL**

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointment by the Court of Appeal, and Steffan Imhoff, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Anderson and Carol Wendelin Pollack, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MERRICK, J.**\*—On September 1, 1981, an 18-count complaint, containing 16 felony counts and 2 misdemeanor counts, was filed against defendant in Los Angeles Municipal Court. A preliminary hearing was commenced on these charges, and prior to completion of the hearing, a plea bargain was formulated between defense counsel and the deputy district attorney. Pursuant to that agreement, on December 17, 1981, in municipal court, defendant waived his right to preliminary hearing and pleaded guilty to four of the charged counts, the remaining fourteen counts to be dismissed on motion of the People after probation and sentencing hearing in superior court. After an information was filed in superior court similarly charging defendant, the district attorney and defense counsel respectively, filed motions in superior court to aggravate and mitigate the sentence imposed upon defendant.

On May 26, 1982, defendant filed an affidavit of prejudice pursuant to Code of Civil Procedure section 170.6 against Superior Court Judge Richard Kolostian. On June 4, 1982, it was ruled that the 170.6 affidavit had not been timely filed and it was not accepted by the court. On June 30, 1982,

---

*Assigned by the Chairperson of the Judicial Council.

Judge Kolostian sentenced the defendant to a total term of 33 years less a total credit of 444 days. Defendant was arraigned on the remaining counts, pleaded not guilty, and on motion of the People, they were dismissed pursuant to the plea bargain. Defendant appeals from the judgment entered upon his plea of guilty, and assigns as error a number of contentions. A brief recital of the facts will assist in an understanding and resolution of these contentions.

I. *Facts*

On August 25, 1981, "Jill," 13 years of age, "Stephanie," 13 years of age, and "Debbie," 16 years of age were at home about 1:15 or 1:30 p.m. watching TV. Defendant came into the house, ostensibly to load some boxes into his car. He asked the girls to help him. When they went to the garage to assist, he pulled a knife and showed them a portion of a gun and ordered them into his car. He threatened to slit their necks from "ear to ear." They drove for about 45 minutes or an hour, when defendant stopped and forced the girls to take some pills. He began driving again and eventually stopped at a lemon grove. He forced the girls to take off their clothes and then had each of the girls orally copulate him. He also made Jill orally copulate Stephanie. The girls got dressed and defendant drove them to a store for cigarettes and something to drink. He said he would then drive them home, but he pulled off the freeway and ordered Jill and then Stephanie to orally copulate him again. Defendant began driving again and backed into a ditch. A truck came by and the driver gave the defendant and the three girls a lift to a Carl's Jr. restaurant where they called their parents. The defendant had left the restaurant. The foregoing acts formed the bases for the 16-count felony complaint filed against the defendant for kidnaping, furnishing controlled substances, lewd and lascivious acts upon minors, and acts of oral copulation, with further allegations that at the time of the commission of the designated criminal acts, defendant used a knife and a firearm.

A separate incident on May 13, 1981, resulted in the filing of misdemeanor charges against defendant of a violation of Penal Code section 631, subdivision (a) (unauthorized telephone connection) and Penal Code section 653m, subdivision (b) (annoying telephone call) and are designated as counts XVII and XVIII of the complaint.

II. *Did the Trial Court Err in Holding That the Motion to Disqualify Under Code of Civil Procedure Section 170.6 Was Untimely?*

■ Defendant argues that the trial judge's ruling was erroneous; and therefore, the maximum-term sentence to state prison was unlawful, null and void, and must be set aside.

Our analysis of this contention, distilled from the record, indicates that the threshold question is not whether the motion to disqualify under Code of Civil Procedure section 170.6 was timely or not, but rather whether or not the defendant was entitled to raise the challenge at all, inasmuch as one of the consented-to terms of the plea bargain was that "Judge Kolostian" would do the sentencing "if available."

An examination of the record discloses that in formulating the terms of the plea bargain, the prosecutor explicitly spelled out the identity and nature of the four counts to be pleaded to by the defendant. When the defendant was asked, "Do you understand what it is that you are charged with, sir?," he replied, "Yes." The prosecutor then advised the defendant of the maximum penalty for each of the counts totaling 31 years, plus 3 years for use of a gun, or a total of 34 years. When asked if he understood, the defendant responded, "Yes." Then the following critical on-the-record discussion took place anent the sentencing judge, between the prosecutor, Mr. Rabichow, the defendant, Robert Reynolds, and defense counsel, Deputy Public Defender, Mr. Waco:

"MR. RABICHOW: Furthermore, in discussions with your attorney, it is agreed that as part of the plea negotiations, the People would have the right to choose from three judges; the judge who would be presiding in Department R or Judge Kolostian or Judge Devich.

"Do you understand that, also, as part of the agreement?

"THE DEFENDANT: I do.

"MR. RABICHOW: I will further state to you at this time that the People would pick Judge Kolostian, and that the validity of the plea hinges on his doing the sentencing, if he can do so.

"Do you understand that?

"THE DEFENDANT: Yes.

"MR. RABICHOW: If for some reason he is unavailable for sentencing, if something happens and he is unavailable for sentencing, the People would then have the right to choose between the remaining two judges, Judge Devich or whoever is in 'R.' But unless that happens, it would be Judge Kolostian.

"THE COURT: I think Judge Horowitz might be—

"Mr. Waco: I anticipated that—I was under the impression that Judge Horowitz would be taking over at the end of this month or next month.

"The Court: That is what I read in the Daily Journal.

"Mr. Rabichow: This is what I have heard, also, but I am just making the defendant aware because one can't always predict what is going to happen in a month.

"The Court: Well, you are limiting yourself to—now, you said or whoever else might be up there. Okay.

"Well, no, that's not exactly it; but I assumed it would either be just that we would have a choice between Judge Horowitz, who I anticipate would be up there, or Judge Devich.

"Mr. Rabichow: Or Judge Kolostian.

"Mr. Waco: Well, the case is now going to be sentenced before Judge Kolostian. If he is unavailable, I don't care whether it stays in 'R' where I anticipate Judge Horowitz will handle it, or, if the People want Judge Devich to handle it, that's fine—either of those other two if Judge Kolostian is unavailable.

"The Court: All right.

"Mr. Rabichow: It is stipulated that if for some reason there is another judge in 'R'—I mean, I can't predict exactly which judge is going to be present.

"In any event, Mr. Reynolds, you understand what the agreement is in that regard?

"The Defendant: Yes, sir.

"Mr. Rabichow: All right.

"Do you understand what the consequences are of your plea?

"The Defendant: Yes, I do."

The balance of the record of the proceedings before the Magistrate, indicates a very thorough advisement of constitutional rights, an intelligent understanding and waiver of those rights by defendant, and a taking of pleas

to the four counts in question, all in conformance with the requirements of *Boykin-Tahl* and no issue has been raised with respect thereto by the defendant.

After the guilty plea in Municipal Court on December 17, 1981, there were the following appearances, actions and continuances in the superior court:

| | |
|---|---|
| December 30, 1981 | Appearance before Judge Devich continued to 1/20/82. |
| January 20, 1982 | Appearance before Judge Horowitz continued to 2/23/82. |
| February 23, 1982 | Appearance before Judge Kolostian. Probation and sentence continued to 3/22/82. |
| March 22, 1982 | Appearance before Judge Kolostian. Probation and sentence continued to 4/26/82. |
| April 23, 1982 | Appearance before Judge Kolostian. Probation and sentence date of 4/26/82 advanced and vacated. Public Defender relieved and John Kemp substituted in as counsel of record; probation and sentence hearing continued to 6/4/82. |
| May 26, 1982 | Defendant's Declaration of Prejudice under Code of Civil Procedure section 170.6 filed. |
| June 4, 1982 | Appearance before Judge Kolostian. 170.6 affidavit ruled not timely filed and not accepted by court; probation and sentence hearing continued to 6/30/82. |
| June 30, 1982 | Appearance before Judge Kolostian. Defendant sentenced. |

We note from a review of the record and the above court calendar that the six continuances over a six-month period were all at the request of the defendant, and despite three appearances before Judge Kolostian (Feb. 23, Mar. 22, and Apr. 23, 1982), it was not until May 26, 1982 that a belated motion to disqualify Judge Kolostian under Code of Civil Procedure section 170.6 was filed. We question the timeliness of such a delayed challenge, but our analysis of what transpired does not require us to reach that issue. Our review of the record compels us to hold that by accepting the terms of the plea bargain, which included the condition that "Judge Kolostian" sentence him, defendant consented to Judge Kolostian and thus waived his right to challenge him.

"Plea bargaining has become an accepted practice in American criminal procedure, 'an integral part of the administration of justice in the United States' (*Barber* v. *Gladden* (D.Ore. 1963) 220 F.Supp. 308, 314), 'essential

to the expeditious and fair administration of justice.' (*People* v. *Williams* (1969) 269 Cal.App.2d 879, 884 [75 Cal.Rptr. 348].) 'The great majority of criminal cases are disposed of by pleas of guilty, and a substantial number of these pleas are the result of prior dealings between the prosecutor and the defendant or his attorney.' (American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (1967) p. 60.)

"Both the state and the defendant may profit from a plea bargain. The benefit to the defendant from a lessened punishment does not need elaboration; the benefit to the state lies in the savings in costs of trial, the increased efficiency of the procedure, and the further flexibility of the criminal process. Numerous courts, commissions, and writers have recognized that the plea bargain has become indispensable to the efficient administration of criminal justice." (*People* v. *West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409].)

" 'Plea negotiation, with bargains duly honored, is a device necessary to administration if a steady flow of guilty pleas is to be maintained.' . . . It is generally assumed that the state has an interest in settling criminal cases by means more economical than litigation, and that the vast numbers of guilty pleas accepted each year relieve courts of an otherwise unmanageable burden." (Newman, Conviction, The Determination of Guilt or Innocence Without Trial (1966); accord *Blackledge* v. *Allison* (1977) 431 U.S. 63, 71 [52 L.Ed.2d 136, 97 S.Ct. 1621].)

Under the terms of the plea bargain in the present case, the defendant was to plead to four of the eighteen counts charged: *Count III* (Pen. Code, § 288, subd. (b), lewd and lascivious act, by force, on a child under 14, Jill A., age 13); *count IV* (Pen. Code, § 288a, subd. (c), oral copulation by force on Jill A., age 13, when defendant was more than 10 years older); *count XI* (Pen. Code, § 288a, subd. (c), oral copulation by force on Stephanie H., age 13, when defendant was more than 10 years older); *count XVI* (Pen. Code, § 288a, subd. (c), oral copulation by force on Deborah R.). On count IV defendant would also admit the use of a gun. (Pen. Code, § 12022.3.)

As a further condition of the plea, as more fully set forth in the excerpt from the clerk's transcript above, it was agreed that the sentencing would be done by one of three superior court judges, the People preferring "Judge Kolostian, if available." The defendant understood he could be sentenced to a maximum term of 34 years. The bargained-for promise of the People was that the remaining 14 counts would be dismissed after probation and sentencing.

The plea bargain was consummated exactly within the bargained-for terms, i.e., defendant pleaded to the four designated counts; he was sentenced by the agreed-upon judge (Judge Kolostian) to a maximum term of 33 years with credit for 444 days; and the remaining 14 counts were dismissed on motion of the People.

If by some convuluted reasoning defendant was attempting to withdraw from his plea bargain by challenging Judge Kolostian, he failed. Good cause for withdrawal of a plea must be shown by clear and convincing evidence. No facts were shown which would cause a trier of fact to believe that defendant's judgment in agreeing to the bargain had been impaired by fault of the prosecution or the court. The record discloses that the defendant is an experienced paralegal who has worked for a number of attorneys over the years. He entered into the plea bargain herein with a qualified deputy public defender at his side. A perusal of the record reflects no possible indication of any mistake, ignorance, inadvertence or any other factor overreaching the defendant's free and clear judgment, nor has any such argument been advanced by the defense.

We find that all bargains of the agreement were duly honored and all inducements and promises fulfilled. We hold that by accepting the terms of the plea bargain, which included the condition that "Judge Kolostian" sentence him, defendant consented to Judge Kolostian and thus waived his right to challenge him. The purported motion to disqualify Judge Kolostian was meaningless, and was properly denied by trial Judge Kolostian. There was no error.

III. *Court Improperly Used Age and Vulnerability of the Victims to Impose the Upper Term in Sentencing*

Rule 441(d) of the California Rules of Court proscribes a trial court's use of a fact which is an element of the crime to impose the upper term. In three of the four counts defendant pled to, "age" was an element of the offense in that the complaint alleged that the victims were 13 years old, or "under the age of 14." Nevertheless, in sentencing the defendant to the upper terms on those three counts, as well as on the fourth count not involving a minor, the trial judge remarked on the record as follows:

"Whether it is mitigation or not, they were on young children.

"I think there is a case that says you can't use that but it seems to me that a young child is more vulnerable because he can't fight back. I would like to see him do it on a 20 year old. It is only logical that age should be considered notwithstanding the appellate courts."

The case the trial judge alluded to is *People* v. *Flores* (1981) 115 Cal.App.3d 924 [171 Cal.Rptr. 777]. In discussing sentencing for violations of Penal Code section 288a, involving minors, the court ruled: ". . . it seems clear that the Legislature already has determined that all persons of specified ages are 'particularly vulnerable' by reason of their age alone and, consequently has provided increased punishment for offenses committed against them. The trial court's attempt to support appellant's sentence by reference to these same factors, therefore, was erroneous." (*People* v. *Flores, supra,* 115 Cal.App.3d 924, 927.) Shortly after *Flores,* the case of *People* v. *Ginese* (1981) 121 Cal.App.3d 468 [175 Cal.Rptr. 383] was decided. The court, following the *Flores* decision, held at pages 476-477 that the trial court erred in using the age of the victims as a factor in imposing the upper term of the sentence for a violation of Penal Code section 288. The court, citing *Flores,* observed: "The Court of Appeal looked at the scheme of law pertaining to punishments for oral copulation which, it said, made it clear the Legislature already determined that all persons of specified ages are particularly vulnerable by reason of their age alone and, consequently, the Legislature had already provided increased punishment for offenses committed against them (Pen. Code, § 288a, by person over 21 with person under 16 punishable only as felony—by 16 months, or 2 or 3 years; with person under 14 and more than 10 years younger, punishable by 3, 6 or 8 years). Thus the court concluded use of the factor of minority tied to vulnerability was error. . . ."

The *Flores* and *Ginese* decisions of the appellate courts are stare decisis and must be followed. It was error for the trial judge to question the "logic" of the appellate court's decision or to engraft his own philosophy of sentencing onto a procedure established by the California Rules of Court. In light of this error we must remand for resentencing consistent with the holdings in *Flores* and *Ginese* and the California Rules of Court.

IV. *The Trial Court Erred in Failing to Stay the Sentence on Count III Under Penal Code Section 654*

 In count III of the complaint the defendant pled guilty to a violation of Penal Code section 288, subdivision (b), lewd and lascivious act, by force on a child under 14, Jill A., age 13 and in count IV, defendant pled guilty to a violation of Penal Code section 288a, subdivision (c), oral copulation by force on Jill A., age 13, when defendant was more than 10 years older. Under Penal Code section 654, a criminal defendant may not be punished twice for doing an act which is prohibited by two or more criminal statutes.[1]

---

[1]Penal Code section 654 provides in relevant part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

The defendant argues that any lewd or lascivious conduct in regards to victim Jill A. was preparatory to, or part of, the unlawful oral copulation and therefore defendant, consistent with Penal Code section 654, could not be punished for both lewd conduct (§ 288, subd. (b)) and forcible oral copulation (§ 288a, subd. (c)), and therefore this court should order the sentence on count III to be stayed pending completion of the sentence on count IV, and thereafter to become permanently stayed. We decline to so rule.

In *People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63], citing *People* v. *Slobodion* (1948) 31 Cal.2d 555 [191 P.2d 1], the California Supreme Court noted: ". . . we held that section 654 did not preclude punishment for both lewd and lascivious conduct and oral copulation, even though both acts were closely connected in time and a part of the same criminal venture, because the act giving rise to the lewd and lascivious conduct was separate and distinct and was not incidental to or the means by which the oral copulation was accomplished." (At p. 553.) Also, the same court in *People* v. *Hicks* (1965) 63 Cal.2d 764 [48 Cal.Rptr. 139, 408 P.2d 747], held that section 654 did not preclude separate punishment for two counts of oral copulation and one count of sodomy arising from the same criminal venture (burglary) because each offense was a separate and distinct act and was not incidental to or the means by which any other offense was accomplished. An earlier case, *People* v. *Greer* (1947) 30 Cal.2d 589, 600 [184 P.2d 512], sets forth the rule that "if the touching of the prosecutrix's body . . . was essentially such touching as would be considered a part of the rape itself, it could not serve as a basis for a separate conviction. If, on the other hand, it was clearly not a part of the rape, but a part of a separate course of conduct, it could be held a separate offense."

Without a full recitation of the nauseating details of each act, we note from the facts presented at the preliminary hearing, that defendant committed six separate criminal acts on victim Jill A., five of which consisted of oral copulation. In addition to these five acts, defendant also touched Jill's vagina. Jill explained to the doctor who examined her that appellant had put his finger in her vagina. During the examination she evidenced pain and tenderness due to defendant's touching. The touching with his finger of Jill's vagina was not done as a means of orally copulating her, nor was the touching done in the course of undressing Jill. She undressed herself at his command.

According to *People* v. *Perez, supra,* 23 Cal.3d 545, 553, "[a] defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act." It is immaterial that the acts

may be closely connected in time and a part of the same criminal venture so long as they are separate and distinct and one act is not committed as a means of committing another. In *Perez* the Supreme Court held that Penal Code section 654 does not preclude punishment for each such act.

 Certainly, when the defendant elected to perform these criminal sex acts on a 13-year-old girl who was made afraid by him, and who had never even kissed her boyfriend let alone remembered seeing a penis before, he was indeed more culpable than a defendant who might have performed only one act on such a victim. Since the touching of Jill was not necessary to the oral copulation, or even necessary to prepare Jill for oral copulation since she had undressed herself, this lewd and lascivious conduct did not facilitate the commission of, nor was it incidental to the commission of, the separate sex offense of forcible oral copulation. We therefore conclude that section 654 does not preclude punishment for each of the above offenses, and that the trial judge properly punished defendant by imposing sentences for both count III (Pen. Code, § 288, subd. (b)) and count IV (Pen. Code, § 288a, subd. (c)).

### V. *Did the Trial Court Properly Impose a Full Consecutive Term on Count III Pursuant to Penal Code Section 667.6, Subdivision (c)?*

 Defendant contends that the full consecutive terms imposed for counts III, XI and XVI pursuant to Penal Code sections 667.6, subdivisions (c) and (d) were erroneously imposed because such terms were enhancements and should have been specifically pled and proven.

*People* v. *Masten* (1982) 137 Cal.App.3d 579, 591-592 [187 Cal.Rptr. 515] is in agreement with *People* v. *Stought* (1981) 115 Cal.App.3d 740 [171 Cal.Rptr. 501] and concludes "that any sentence imposed under section 667.6 subdivision (c) was *in lieu* of any enhancements pursuant to section 1170.1. . . . Sentencing under section 667.6 subdivision (c) does *not* require any further pleading or proof." (Second italics added.)

Penal Code section 1170.1, subdivision (a) clearly discusses a consecutive sentence as a subordinate term which is added to a principal term to form an aggregate term. The subordinate term may or may not be increased by an enhancement, depending on whether the crime for which the subordinate term is imposed is a violent felony. The consecutive term itself is clearly distinguished from enhancements in the language of the statute.

The advisory committee comments to Rules of Court, rule 405, state that while the facts giving rise to most enhancements must be charged and found, "enhancement arising from consecutive sentences result from the sentencing

judge's decision to impose them, and not from a charge or finding." This clearly should be the case with regard to consecutive sentences imposed pursuant to sections 667.6, subdivisions (c) and (d). Those sections only affect the length of the consecutive sentence (whether it is full or reduced). They do not change the fact that the consecutive sentence is imposed for the underlying crime which has clearly been charged in the complaint and information. There is nothing else to charge or find other than that the defendant committed the crime of which he had notice. (Cf. *People* v. *Best* (1983) 143 Cal.App.3d 232, 236-238 [191 Cal.Rptr. 614].)

Defendant was specifically charged with the crimes for which the consecutive terms were imposed. No further pleading or proof is required.

VI. *The Trial Court Failed to Separately State Reasons for Imposing Full Term Consecutive Sentence Under Penal Code Section 667.6, Subdivision (c)*

■ At the time of sentencing in this case, the trial judge imposed a full consecutive sentence on count III (Pen. Code, § 288, subd. (b), child molestation by force) of 7 years to the base term on count IV (Pen. Code, § 288a, subd. (c), oral copulation on victim under 14 years). In each count the victim was Jill A., and the offenses occurred on the same occasion. Although prompted to do so by the prosecution, the court really stated no reason for imposing a full consecutive term as opposed to the normal one-third term under section 1170.1, subdivision (a).

Section 667.6, subdivision (c) specifically vests the trial court with discretion to choose either full or partial consecutive terms, and the trial court must state its reasons for choosing the full consecutive term.

■ The California Supreme Court in *People* v. *Belmontes* (1983) 34 Cal.3d 335, 347-348 [193 Cal.Rptr. 882, 667 P.2d 686], acknowledged that: "Although with respect to section 667.6 there has been general agreement that some statement of reasons is required, there has been a divergence of views in Court of Appeal decisions regarding the nature and specificity of the reasons that must be given. Some of the confusion has been the result of disagreement about the relationship between sections 1170.1 and 667.6, subdivision (c). . . . In deciding whether to sentence consecutively or concurrently, and if consecutively, whether to do so under section 1170.1 or under the harsher full term provisions of subdivision (c) of section 667.6, the court is obviously making separate and distinct decisions. A decision to sentence under section 667.6, subdivision (c) is an additional sentence choice which requires a statement of reasons separate from those justifying the decision merely to sentence consecutively.

"This does not mean that the reasons justifying full term consecutive sentencing under section 667.6, subdivision (c) must necessarily be different than those used to justify the imposition of consecutive sentences under section 1170.1. . . . The crucial factor, in our view, is that the record reflect recognition on the part of the trial court that it is making a separate and additional choice in sentencing under section 667.6, subdivision (c)."

 An examination of the record at sentencing in this case indicates that the statements of the judge were inadequate with respect to the requirements of 667.6, subdivision (c) as enunciated by the Supreme Court in *Belmontes,* 34 Cal.3d 335.

Since this court has ordered on other grounds that this case be remanded for resentencing, we invite the trial judge's scrutiny to the guidelines promulgated by the Supreme Court in its *Belmontes'* decision and suggest that on resentencing the defendant on count III, he abide by the procedures suggested by Justice Kaus. To assist, we quote from pages 348 and 349 of the *Belmontes'* decision: "The ideal method of proceeding would be for the trial court first to decide generally between concurrent and consecutive terms, following the criteria listed in rule 425. Once the court has decided to sentence a defendant to consecutive terms and has stated its reasons therefor, it then must decide whether the consecutive terms should be under the principal/subordinate scheme of section 1170.1 or under the full and separate term scheme of section 667.6, subdivision (c). If the latter is chosen, the reasons therefor should be stated for the record. This decision, of course, should be made very carefully, for the Legislature obviously intended by the alternative language in section 667.6, subdivision (c) that this more punitive provision be reserved for the more serious sex offenders. . . ."

VII. *The Full Consecutive Term Was Not Legally Imposed, Because of the Nonexistence of Sentencing Guidelines*

 Defendant contends that because of the absence of uniform sentencing criteria and the failure of the Judicial Council to promulgate a specific sentencing rule as to Penal Code section 667.6, subdivision (c), the trial judge's imposition of a full consecutive term on count III was illegal. We disagree.

In California Rules of Court, rule 425, the Judicial Council set forth the factors which affect the decision to impose consecutive rather than concurrent sentences. In *People v. Wilson* (1982) 135 Cal.App.3d 343, 354 [185 Cal.Rptr. 498], the appellate court observed: " 'The decision to sentence a defendant under Penal Code section 667.6, subdivision (c) rather than sec-

tion 1170.1, is a decision concerning consecutive rather than concurrent sentencing, and the factors listed in rule 425 are the proper factors to consider in making that choice. It would be contrary to the legislative intent of Penal Code section 667.6, subdivision (c) to hold .that a trial court could not exercise the discretion granted until the Judicial Council provides a specific rule governing that choice when the rule would of necessity be a mere reiteration of existing rule 425.' " (See *People* v. *Wilson, supra,* 135 Cal.App.3d 343, 354, fn. 5.)

■ The California Supreme Court reaffirmed the rule in *People* v. *Wilson, supra,* 135 Cal.App.3d 343, when Justice Kaus wrote in *People* v. *Belmontes, supra,* 34 Cal.3d 335, 346: "Pursuant to section 1170.3 the Judicial Council adopted a number of rules, including rule 425 of the California Rules of Court regarding criteria for deciding between consecutive and concurrent sentences. The decision to sentence a defendant under section 667.6, subdivision (c) rather than section 1170.1 is essentially a decision concerning consecutive sentencing, and the factors listed in rule 425 are relevant to it. (See *People* v. *Karsai* (1982) 131 Cal.App.3d 224, 238 [182 Cal.Rptr. 406].) Nothing in section 1170.3 calls for an additional rule for consecutive sentencing under section 667.6, subdivision (c). When the Legislature added section 667.6 in 1979, it did not amend section 1170.3 to require separate criteria for sentencing under subdivision (c) of section 667.6. We therefore presume that the Legislature intended the existing criteria to cover sentencing under section 667.6, subdivision (c). (See *Estate of McDill* (1975) 14 Cal.3d 831, 837-839 [122 Cal.Rptr. 754, 537 P.2d 874].) Moreover, it would be extremely difficult to formulate separate and distinct criteria from those already set forth in rule 425. (See *People* v. *Wilson* (1982) 135 Cal.App.3d 343, 353-354 [185 Cal.Rptr. 498].)"

■ The factors listed in rule 425 are the proper factors for the trial judge to consider in making a sentencing choice concerning consecutive and concurrent sentencing and no additional Judicial Council guideline governing that choice is necessary. The imposition of a full consecutive term on count III was not illegal because of any alleged absence of sentencing guidelines.

VIII. *Penal Code Section 667.6, Subdivision (c) Violates Constitutional Guarantees of Equal Protection by the Absence of Uniform Sentencing Criteria for Its Imposition*

■ Our discussion under heading "VII," wherein we recited appellate and supreme court rulings in *People* v. *Wilson, supra,* 135 Cal.App.3d 343 and *People* v. *Belmontes, supra,* 34 Cal.3d 335, is applicable to defendant's contention that Penal Code section 667.6, subdivision (c) violates the con-

stitutional guarantee of equal protection. We find that those rulings are controlling and compelling, and that there was no violation of defendant's guarantee of equal protection in the instant case because of the absence of separate Judicial Council criteria for sentencing under section 667.6, subdivision (c).

We refer defendant to pages 355 and 356 of *People* v. *Wilson, supra,* 135 Cal.App.3d 343, for reasons why there is no denial of equal protection, and mention them here in briefer form:

1. ". . . existing criteria for imposing consecutive sentences under rule 425 are adequate and quite encompassing."

2. ". . . trial court is required to use these criteria and to further explain which circumstances justify imposition of consecutive sentences under section 667.6, subdivision (c)."

3. ". . . rule 408(a) provides in part, 'The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made.' As long as these additional criteria are stated on the record by the sentencing judge, a defendant can be legitimately sentenced to full, separate and consecutive terms under section 667.6, subdivision (c), without the court having to recite the established Judicial Council criteria."

4. ". . . 'The equality guaranteed by the equal protection clause is equality under the same conditions, and among persons similarly situated.' (See Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 341, pp. 3635-3636 and cases cited therein.)"

By requiring the trial court to separately state its reasons for sentencing under section 667.6, subdivision (c), Courts of Appeal have reasonably construed the statute to avoid constitutional infirmity. The defendant herein has been treated the same as all similarly situated felons, i.e., those who have been convicted of crimes designated by section 667.6, subdivision (c), and he has no valid equal protection complaint.

IX. *Penal Code Section 667.6, Subdivisions (c) and (d) Violate Constitutional Guarantees of Equal Protection by Discriminating Against Sex Offenders*

Defendant contends that section 667.6 constitutes invidious discrimination against sex offenders as compared to similarly situated persons who commit serious and violent felonies.

The basic rule of equal protection is that those persons similarly situated with respect to the legitimate purpose of the law must receive like treatment. (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d· 1194].) ▆▆▆ However, in the instant case, defendant has failed to show that members of his alleged class (those persons convicted of sex offenses enumerated in § 667.6, subd. (c)) are similarly situated to those persons convicted of other crimes. Defendant is not merely a person convicted of a violent offense; he is a person convicted of multiple violent sex offenses upon three young females (two under fourteen years of age). Violent sex offenses differ from other violent offenses in many ways, including the fact that they involve the most personal invasion of another person's self possible. (See *People* v. *Karsai, supra,* 131 Cal.App.3d 224, 244.) As pointed out in *Karsai*: "Violent sex offenses differ from other types of offenses in many ways, including the reasons and motive of the criminal, the outrage and harm to the victim, and the potential for danger to the victim and society in general. These differences compel different treatment. We conclude that violent sex offenders are not similarly situated with other offenders and thus may be treated differently."

The state does have a compelling interest in separating out violent sexual offenders from other violent offenders. Penal Code section 667.6 is directed at recidivism and multiplicity of offenses. "The Legislature could rationally conclude that those matters present a special problem and danger to society in sex offense cases and that they merit special treatment. We cannot say that the statute lacks any rational purpose." (*People* v. *Karsai, supra,* 131 Cal.App.3d 224, 244.)

We find no irrational classification scheme with respect to Penal Code section 667.6, subdivision (c), and no invidious discrimination that would deny to the defendant equal protection of the law.

### X. *Defendant's Sentence Constitutes Cruel and Unusual Punishment*

▆▆▆ Appellant contends that his 33-year sentence constitutes cruel and unusual punishment because it is grossly disproportionate to the gravity of his acts and constitutes excessive punishment for his convictions. In California, argues appellant, a punishment may violate article I, section 17 of the Constitution if "although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921]; *In re Foss* (1974) 10 Cal.3d 910, 919 [112 Cal.Rptr. 649, 519 P.2d 1073].) In assessing the validity of any challenged punishment, appellant suggests the appli-

cation of the three-part analysis used in *In re Lynch, supra,* 8 Cal.3d 410: (1) The nature of the offense and/or the offender with particular regard to the degree of danger both present to society; (2) a comparison of the challenged penalty with the punishments prescribed in the same jurisdiction for different offenses which must be deemed more serious; and (3) a comparison of the challenged punishment with the punishments prescribed for the same offense in other jurisdictions having the same constitutional provision.

Appellant's contention was answered in *People* v. *Karsai, supra,* 131 Cal.App.3d 224, 242, and also cited in *People* v. *Wilson, supra,* 135 Cal.App.3d at page 356: "In enacting Penal Code section 667.6 the Legislature has chosen to treat violent sex offenses and violent sex offenders in a manner differently than other types of offenses and offenders. The statute is directed at recidivism by providing for longer enhancements for prior convictions of the same type of offense. The statute is directed at multiplicity of offenses by providing for full, separate, consecutive sentencing. In view of the outrageous nature of violent sexual offenses and the manifest danger to society from recidivism and multiplicity of offenses, we cannot say that the severity of the punishment is so disproportionate to the crimes so as to shock the conscience and offend fundamental notions of human dignity." Appellant would have the court believe that he was sentenced to the 33-year term for a single afternoon of misconduct. The truth is that appellant pleaded guilty to multiple counts of oral copulation on three frightened young girls, accomplished by threatening to use a knife and a gun and by forcing the girls to take drugs. The appellant was a career sex criminal having served five prior prison terms for serious felonies, including offenses similar to the instant offenses dating back to 1968, all of which were considered by the sentencing judge pursuant to California Rules of Court, rules 425(b) and 421(b).

In *People* v. *Karsai, supra,* 131 Cal.App.3d 224, 241, the court held: "The offenses and offenders at which Penal Code sections 667.6 and 1170.1, subdivision (h) are aimed at what might be termed 'violent' sexual offenses and offenders. They involve the use of force or fear to accomplish the most personal invasion of another person's self possible."

As the court noted in *People* v. *Preciado* (1981) 116 Cal.App.3d 409, 412 [172 Cal.Rptr. 107]: "The severity of Preciado's sentence is directly proportionate to the number and violence of his crimes. Mandatory imposition of consecutive sentences for multiple violent rapes does not constitute cruel and unusual punishment."

In the instant case consecutive sentences for multiple oral copulations which were both forcible and committed on children by a recidivist does not constitute cruel and unusual punishment.

The judgment is affirmed, and the matter is remanded to the trial court for resentencing consistent with the California Rules of Court, decisional law enunciated in *People* v. *Flores, supra,* 115 Cal.App.3d 924; *People* v. *Ginese, supra,* 121 Cal.App.3d 468; *People* v. *Belmontes, supra,* 34 Cal.3d 335; and the opinion of this court.

Johnson, Acting P. J., and Thompson, J., concurred.

A petition for a rehearing was denied May 16, 1984, and appellant's petition for a hearing by the Supreme Court was denied June 13, 1984.