Filed 2/4/15  P. v. Hedrick CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C075693 |
| Plaintiff and Respondent, | (Super. Ct. No. NCR85078) |
| v. | |
| DUSTIN LEE HEDRICK, | |
| Defendant and Appellant. | |

Defendant Dustin Lee Hedrick entered a plea of no contest to one count of lewd conduct on a child under the age of 14 (Pen. Code, § 288, subd. (a) (hereafter section 288(a))[1] and was sentenced to the midterm of six years in state prison.  On appeal, defendant contends the trial court abused its discretion by denying his request for probation and imposing the midterm rather than the lower term.  Finding no error, we shall affirm.

---

[1] Undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant attended a scouting event in Red Bluff in 2010. At the time, he was a 19-year-old Eagle Scout. After the event, another Eagle Scout, 17-year-old C.D., invited defendant to a sleepover. D.C., then 13, was also invited.

During the course of the evening, C.D. said something that hurt D.C.'s feelings. D.C. went outside and defendant joined him for a talk. During their talk, D.C. confided that he was struggling with feelings of sexual confusion and thoughts of suicide.

Defendant and D.C. watched television in C.D.'s living room. While there, defendant put his hand on D.C.'s knee and then kissed him. Defendant then led D.C. to C.D.'s bedroom, where C.D. was playing video games. Defendant lay on top of both boys and began to kiss them, putting his hand down their pants and fondling them. Defendant orally copulated D.C. and C.D., and directed D.C. to orally copulate defendant. Afterwards, all three dressed and retired to separate sleeping areas in C.D.'s house.

After the incident, defendant maintained contact with D.C. through e-mail and Facebook. In May 2012, defendant and D.C., then 20 and 15, respectively, attended another scouting event in Butte County. Defendant and D.C. shared a bunk.

Several days later, defendant sent D.C. a passionate e-mail, stating, "You are an amazing person and I hope that someday, someday soon, you would make me one lucky guy and be my amazing boyfriend." D.C.'s father found the e-mail and contacted the authorities. Defendant's computer was searched, and police found evidence that defendant had exchanged intimate photographs with seven high-school-aged boys.

On November 6, 2012, defendant was charged by information with committing a lewd act on a child under the age of 14 (§ 288(a)—count I) and misdemeanor child molestation (§ 647.6, subd. (a)—count II). Defendant was arraigned on May 20, 2013,

2

and pleaded no contest to the violation of section 288(a) (count I). The remaining count was dismissed.

Prior to sentencing, the trial court ordered an examination of defendant pursuant to section 288.1. Ray H. Carlson, Ph.D., performed the examination and submitted a written report on July 15, 2013. In his report, Dr. Carlson observed that defendant "presents as tearful, remorseful, and regretful about the sexual behaviors that have led to his current situation. He expresses an appreciation for the fact that others younger than himself may have been harmed by his activity and the fallout from the activities becoming known by the victim's families."

As part of his examination, Dr. Carlson administered a diagnostic instrument known as the Inventory of Offender Risks Needs and Strengths, which indicated that defendant presents "an extremely low level of risk for future reoffense if maintained in treatment within a community." Another diagnostic instrument known as the Sexual Violence Risk Inventory-20 indicated that defendant presents a "Low level of risk." Ultimately, Dr. Carlson concluded that, "if granted probation, or alternatively, if not sentenced to state prison, [defendant] would not constitute a risk to the victims in this matter or to the community at large."

The probation department filed a report on July 31, 2013. In the report, the probation department reported that the victim, D.C., "said he was confused and fearful when these events occurred. He was thirteen and thought it was something he had to do to fit in." The probation department also reported that D.C.'s father observed a dramatic change in D.C.'s behavior in the period following his first encounter with defendant. Among other things, D.C.'s father said, D.C.'s grades plummeted, he started experimenting with drugs, and he attempted suicide.

The probation report stated that defendant acknowledged having been "conflicted" at the time of the first encounter with D.C. "because he knew the boy's age." The

3

probation report added that defendant was "very sorry for what he did. He is frightened of the prospect of prison and hopes he is granted probation. He will do whatever is required of him."

The probation report identified the following factors supporting a grant of probation: (1) defendant has never before been on probation (Cal. Rules of Court, rule 4.414(b)(2)),[2] (2) defendant is willing to comply with the terms of probation (rule 4.414(b)(3)), and (3) defendant appears remorseful (rule 4.414(b)(7)).

The probation report identified the following factors to deny probation: (1) the victim, D.C., was "especially vulnerable. He was an overnight guest, and was a junior scout who said he was in the presence of senior ones" (rule 4.414(a)(3)); (2) defendant "was the cause of significant emotional distress to the victim" (rule 4.414(a)(4)); (3) defendant was "an active participant" (rule 4.414(a)(6)); (4) "defendant took advantage of his senior position in scouting to commit the present offense" (rule 4.414(a)(9)); (5) "defendant has one misdemeanor child molesting conviction involving the present victim that was committed nearly two years after the present offense. Although out of sequence, he nevertheless has established a pattern of regular criminal conduct" (rule 4.414(b)(1)); and (6) "defendant may pose a danger to others if not imprisoned" (rule 4.414(b)(8)).

The probation report noted that defendant had been tested on the Static-99R, "an actuarial measure of risk for sexual offense recidivism." Defendant received a total score of 5 on the Static-99R, placing him in the "Moderate High risk category for being convicted of another sexual offense if he is released on probation." According to the Static-99R coding form, defendant's numerical score correlates to an 11.4 percent risk of reoffense within the next five years.

---

[2] Further rule references are to the California Rules of Court.

The probation report concluded that defendant was eligible for probation, but added that "there are aspects to this case that warrant a ninety-day diagnostic evaluation by the Department of Corrections [and Rehabilitation (CDCR)] before such supervision is considered."

Defendant filed a statement in mitigation on August 1, 2013. In his statement, defendant characterized himself as a sexually confused young man who engaged in consensual sexual activity with another sexually confused young man. Defendant urged the trial court to grant probation, emphasizing his youth, lack of prior record, and history of success in scouting and school.

Defendant appeared for sentencing on October 1, 2013. At the hearing, the trial court stated, "The Court had ordered a [section] 288.1 report by an expert, Dr. Carlson. Dr. Carlson opined that in his opinion that if the defendant was granted probation he would not constitute a risk to the victims in this matter or the community at large. The Court had ordered a probation report and the probation report said many things, one of which is that the defendant is eligible for probation but recommends a 90-day diagnostic evaluation by the [CDCR] be prepared. That is what I am going to do, I want to have input from the [CDCR] before I go any further." Accordingly, the trial court referred defendant for a 90-day diagnostic evaluation by CDCR pursuant to section 1203.03.

The CDCR filed a section 1203.03 report on December 18, 2013. The section 1203.03 report reflected a difference of opinion as to whether defendant should receive probation or a prison term. On the one hand, the staff psychologist recommended probation, noting that "[t]he overall pattern of psychosocial findings is one of minimal risk to the community should probation be granted." On the other hand, the correctional counselor recommended prison, stating, "[Defendant] is considered a poor candidate for probation and a high risk to society." The correctional counselor's report also noted that

5

defendant viewed the sexual encounter with D.C. as "consensual" and believed that D.C. was more sexually experienced than defendant.

The associate warden, for his part, acknowledged "mixed feelings" on the question whether defendant should receive probation. "While the issue of childhood sexuality and sexual exploration is complex," the associate warden wrote, "the concern I find is in the predatory nature of the defendant seeking youthful partners." Accordingly, the associate warden recommended incarceration, although he did so "with hesitancy, as the programs offered in CDCR are not demonstrative of effectively dealing with this psychosocial issue."

The probation department filed a supplemental report on January 15, 2014. After summarizing the section 1203.03 report, and "weighing all viewpoints," the probation department "recommended the defendant be committed to state prison for a term less than the maximum confinement."

Defendant filed a supplemental statement in mitigation on January 15, 2014. As before, defendant emphasized that D.C. was "a willing participant in this incident."

Defendant appeared for the continued sentencing hearing on January 21, 2014. At the hearing, the People urged the trial court to sentence defendant to the aggravated term, arguing that "there are no factors in mitigation, despite what counsel has submitted in his briefing."

D.C. presented a victim impact statement explaining that although he would like to say otherwise, it was not entirely false that "everything that happened between [defendant] and myself was mutual, mutual as in accepted by both sides." D.C. went on to say that defendant "used his position of leadership" to take advantage of him, by offering friendship and acceptance at a time when D.C. was suffering from depression.

6

D.C. also shared that he attempted suicide in September 2012, several months after his relationship with defendant came to light.

D.C.'s parents also presented victim impact statements, emphasizing the emotional toll defendant's actions had taken on their family. The trial court denied the People's request that a representative from the Boy Scouts be allowed to make a statement.

Defense counsel argued forcefully for probation, emphasizing that two court-appointed psychologists had independently concluded that defendant presented a low risk to the community. Defense counsel argued in the alternative for a low term sentence, claiming that D.C.'s willing participation in the encounter constituted a circumstance in mitigation.

The trial court then imposed sentence, stating, "All right. The court's also read and considered the Static-99R report that was filed July 30, 2013, together with the other references made by counsel. [¶] The defendant in this case was 19 at the time of the incident, the victim was 13 years old. The defendant claimed physical interaction was consensual in this circumstance, that the victim had more knowledge regarding physical relationships than he had and that he had two to three physical sexual encounters with both sexes prior to this incident. This was an attempt by the defendant to deflect responsibility for this incident. The defendant misused a position of trust as a senior scout member. [¶] The offense occurred in 2010. The defendant knew it was wrong; however, continued to interact with the victim until his arrest in 2012. During the investigation the defendant was found in possession of pictures portraying high-school-aged boys with their penises in various stages of erection. [¶] . . . [¶] The defendant is eligible for probation; however, the court's considering the criteria affecting probation finds that the victim in this matter was especially vulnerable; he was an overnight guest and a junior scout in the presence of senior ones. The defendant was an active participant. The defendant has never been on probation before. The defendant indicated

7

a willingness to comply with the terms of probation. The defendant appears to be remorseful. And the defendant poses or may pose a danger to others if not in prison. [¶] I've considered all of the circumstances here to find that there would not be a likelihood the defendant would succeed on a grant of probation." Accordingly, the trial court denied defendant's request for probation.

"With regard to the circumstances in aggravation," the trial court continued, "the court finds that the victim was especially vulnerable and was a junior scout in the presence of the defendant who was a senior scout. Therefore, as to count [I], violation of section 288, subdivision (a) . . . , the defendant is sentenced to the midterm of six years." The trial court offered the following explanation for its selection of the midterm sentence: "The court's selected that term due to the aggravating factors stated."

Defendant filed a timely notice of appeal.

## DISCUSSION

## I. Probation

Defendant contends the trial court abused its discretion in denying his request for probation and sentencing him to prison. We disagree.

The trial court has discretion to make numerous sentencing choices, including whether to grant or deny probation. In making these choices, the trial court need only state its reasons in simple language, identifying the primary factor or factors that support the exercise of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 850-851 (*Sandoval*); rule 4.406(a).) When we review a trial court's decision to deny probation, we may not substitute our judgment for that of the trial court. Our function is to determine whether the trial court's order denying probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances. (*People v.*

8

*Weaver* (2007) 149 Cal.App.4th 1301, 1311 (*Weaver*).) A defendant bears a " 'heavy burden' " when attempting to show an abuse of discretion. (*Ibid.*)

Rule 4.414 sets forth certain criteria relevant to the trial court's decision to grant or deny probation. The court may consider facts relating to the defendant, including his willingness to comply with the terms of probation (rule 4.414(b)(3)), whether he is remorseful (rule 4.414(b)(7)), and the likelihood that he will be a danger to others if not imprisoned (rule 4.414(b)(8)). "In deciding whether to grant or deny probation, a trial court may also consider additional criteria not listed in the rules provided those criteria are reasonably related to that decision. (Rule 4.408(a).) A trial court is generally required to state its reasons for denying probation and imposing a prison sentence, including any additional reasons considered pursuant to rule 4.408. (Rules 4.406(b)(2) & 4.408(a).) Unless the record affirmatively shows otherwise, a trial court is deemed to have considered all relevant criteria in deciding whether to grant or deny probation or in making any other discretionary sentencing choice. (Rule 4.409.) [¶] . . . [I]n determining whether a trial court abused its discretion by denying probation, we consider, in part, whether there is sufficient, or substantial, evidence to support the court's finding that a particular factor was applicable." (*Weaver*, *supra*, 149 Cal.App.4th at p. 1313.)

Defendant contends the trial court abused its discretion by "ignoring" the recommendations of two court-appointed psychologists, both of whom opined that defendant presented a minimal risk to the community. However, there is nothing in the record to suggest that the trial court failed to consider the psychologists' recommendations. To the contrary, the record demonstrates that the trial court "considered all of the circumstances," including the psychological evaluations and defense counsel's oral presentation, which focused extensively on the psychologists' recommendations. Although the trial court did not specifically discuss the psychologists' recommendations, or explain its reasons for declining to follow them, no such discussion

9

or explanation was required. (Rule 4.409) Under the circumstances, we cannot conclude that the trial court failed to consider the psychologists' recommendations.

Nor can we find any abuse of discretion in the trial court's conclusion that "defendant poses or may pose a danger to others if not in prison." The trial court was not required to accept the psychologists' opinion that defendant presented a minimal risk to the community. (Cf. *People v. Warner* (1978) 20 Cal.3d 678, 683 [trial court is not bound by probation officer's recommendation]; *In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329 [trial court entitled to evaluate weight to be afforded to psychological evaluation].) Furthermore, the trial court's conclusion that defendant posed a danger to others was supported by substantial evidence. (*Weaver*, *supra*, 149 Cal.App.4th at p. 1313.) For example, the correctional counselor found that "[Defendant] is considered a poor candidate for probation and a high risk to society. The offense happened in 2010 and [defendant], claiming he knows it was wrong, continued to interact with the victim up until his arrest in 2012." The probation department similarly found that "[t]he present offense was not a one-time moment of sexual weakness." Furthermore, as the trial court observed, "the defendant was found in possession of pictures portraying high-school-aged boys with their penises in varying stages of erection." Thus, the trial court's conclusion that defendant presented a danger to others was supported by substantial evidence.

Defendant finds fault with the associate warden's concern that defendant had been "seeking youthful partners." According to defendant, the phrase "seeking youthful partners" was inaccurate, and possibly misleading, because "the record does not reflect that [defendant] sought anyone out, but rather that he met the complaining witness at an event to which he had been invited by a third party, C.D." We cannot say from the present record whether or not defendant was "seeking youthful partners." On the one hand, the record suggests that defendant merely accepted an invitation to attend a

10

sleepover. He does not appear to have orchestrated the sleepover or otherwise acted to lure the victim into a sexually charged environment. On the other hand, defendant clearly put himself in a situation in which sexual activity with a youthful partner was a possibility. In that sense, at least, he could be said to have been "seeking youthful partners." Defendant could also be said to have been "seeking youthful partners" when he exchanged intimate photographs with high-school-aged boys. In any case, we conclude that the associate warden's use of the phrase "seeking youthful partners" was not so misleading as to confuse the trial court or undermine its conclusion that defendant posed a danger to others.

Defendant also finds fault with the Static-99R. As noted, defendant received a total score of 5 on the Static-99R, placing him in the "Moderate High risk category for being convicted of another sexual offence if he is released on probation." According to defendant, the trial court improperly rejected "the findings of two licensed psychologists, one of whom had performed extensive testing, in favor of a score on a standardized instrument administered by a probation officer," thereby failing to give "individualized consideration" to the offense, the offender, and the public interest. We disagree. There is nothing in the record to suggest that the trial court based the denial of probation solely on the Static-99R. Rather, the record suggests that the trial court considered a number of factors, weighing each one in the exercise of its discretion. The fact that defendant, or even another judge, might have weighed them differently does not establish an abuse of discretion. (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1530-1531 ["even if there were several mitigating factors that might weigh in favor of probation, this does not necessarily mean that the trial court abused its discretion in deciding against granting probation"].)

Based on our review of the record, we conclude that substantial evidence supports the trial court's conclusion that "defendant poses or may pose a danger to others if not in

11

prison." We further conclude that the denial of probation was supported by additional rule 4.414 criteria, including the vulnerability of the victim (rule 4.414(a)(3)) and emotional injury to the victim (rule 4.414(a)(4)). Accordingly, we conclude that defendant has failed to meet his heavy burden of showing that the trial court abused its discretion in denying his request for probation.

## II. Midterm Sentence

Defendant also contends the trial court abused its discretion in imposing the midterm sentence. Once again, we disagree.

A conviction for committing a lewd and lascivious act on a child under section 288(a) is punishable by imprisonment for a term of three, six, or eight years. When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term rests within the sound discretion of the trial court. (§ 1170, subd. (b); see also *Sandoval*, *supra*, 41 Cal.4th at p. 847.) In determining the appropriate term, the trial court may consider the record in the case, the probation report, evidence introduced at the sentencing hearing, and "any other factor reasonably related to the sentencing decision." (Rule 4.420(b).) The trial court "shall select the term which, in the court's discretion, best serves the interests of justice." (§ 1170, subd. (b).)

A trial court's sentencing decision will not be disturbed on appeal unless it is so irrational or arbitrary that no reasonable person could agree with it. (*People v. Carmony* (2004) 33 Cal.4th 367, 377; *People v. Jones* (2009) 178 Cal.App.4th 853, 860; see also *Sandoval*, *supra*, 41 Cal.4th at p. 847.) A trial court abuses its discretion if it fails to exercise its discretion in sentencing, relies upon irrelevant circumstances, or relies upon circumstances that constitute an improper basis for decision. (*Sandoval*, *supra*, 41 Cal.4th at pp. 847-848.) The burden is on the party attacking the sentence to show the sentencing decision was irrational or arbitrary, and an appellate court will not substitute its judgment for that of the trial court. (*Jones*, *supra*, 178 Cal.App.4th at p. 861.) "Even

if a trial court has stated both proper and improper reasons for a sentence choice, 'a reviewing court will aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' " (*Ibid.*)

Defendant contends the trial court abused its discretion by ignoring numerous mitigating factors, including (1) D.C.'s "willing participation" in the encounter with defendant (rule 4.423(a)(2)), (2) the fact that defendant had no prior record (apart from his 2013 misdemeanor conviction arising from defendant's second encounter with D.C.) (rule 4.423(b)(1)), and (3) the fact that defendant voluntarily acknowledged wrongdoing early in the criminal process (rule 4.423(b)(3)). However, a trial court has no obligation to make an express statement of reasons as to why proffered factors in mitigation are deemed insignificant or unpersuasive. (*People v. Salazar* (1983) 144 Cal.App.3d 799, 813 ["trial court may minimize or even entirely disregard mitigating factors without stating its reasons"].) Thus, unless the record affirmatively indicates to the contrary, a trial court is presumed to have considered all relevant criteria, including any mitigating factors. (*People v. Holguin* (1989) 213 Cal.App.3d 1308, 1317-1318.)

Defendant tries to show that the trial court failed to consider the proffered mitigating factors in two ways. First, defendant points to the People's contention, at the beginning of the continued sentencing hearing, that "there are no factors in mitigation, despite what counsel has submitted in his briefing." There is nothing in the record to suggest that the trial court was confused by the People's contention. To the contrary, defense counsel specifically addressed the People's contention that there were "no factors in mitigation," stating, "I have like six or seven different circumstances in mitigation and obviously the district attorney either didn't read what I wrote or they're ignoring all the other ones." Moments later, the trial court stated, "The court's also read and considered the Static-99R report that was filed July 30, 2013, together with the other references

13

made by counsel." We cannot conclude, on the basis of this record, that the trial court was unaware of the existence of the proffered mitigating factors.

Second, defendant points to the trial court's statement that "The court's selected [the midterm sentence] due to the aggravating factors stated." According to defendant, the trial court "frankly admitted that it did not balance the aggravating and mitigating factors, but instead based the sentence on the aggravating factors alone." The trial court's statement that the midterm sentence was based on "the aggravating factors stated" does not amount to an "admission" that the court refused to consider any alleged mitigating factor or based its selection of the midterm sentence on aggravating factors alone. The trial court confirmed on the record that it considered "all of the circumstances," including the arguments of counsel, which focused on the alleged circumstances in mitigation. Defendant has failed to cite anything in the record that would undermine the presumption that the trial court considered, but was not persuaded by, the proffered mitigating factors. (See *Weaver*, *supra*, 149 Cal.App.4th at pp. 1317-1318.) Accordingly, we reject defendant's contention that the trial court failed to consider any alleged mitigating factor.

Defendant also argues that the trial court improperly relied on D.C.'s age as a factor in aggravation. The trial court noted the age difference between defendant and D.C. at the beginning of the pronouncement of judgment, stating, "The defendant in this case was 19 at the time of the incident, the victim was 13 years old." Defendant contends the trial court erred in considering the victim's age because it is an element of the offense. (*People v. Quinones* (1988) 202 Cal.App.3d 1154, 1159 (*Quinones*), overruled on other grounds in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12 [trial court erred in relying on victim's age as factor in aggravation].) However, the trial court went on to note that D.C. was "especially vulnerable," adding that "defendant misused a position of trust as a senior scout member." Taken together, we conclude that the trial court's comments reflect a concern for D.C.'s vulnerability, rather than his age. (*People v.*

14

*Robinson* (1992) 11 Cal.App.4th 609, 615, disapproved on other grounds in *People v. Scott* (1994) 9 Cal.4th 331, 353, fn. 16 [child victim's particular vulnerability can be considered, even though age is an element of the offense].)

We further conclude that *Quinones, supra,* 202 Cal.App.3d 1154 and *People v. Ginese* (1981) 121 Cal.App.3d 468, on which defendant relies, are distinguishable. In *Quinones* and *Ginese*, the trial court relied on the victim's age as a factor in aggravation in imposing the upper term for a section 288 charge. (*Quinones*, *supra*, 202 Cal.App.3d at p. 1159; *Ginese*, *supra*, 121 Cal.App.3d at p. 477.) In this case, by contrast, the trial court imposed the midterm. Consequently, the trial court did not consider D.C.'s age as a factor in aggravation.

We find support for our view in *People v. Garcia* (1983) 147 Cal.App.3d 1103, 1106. In that case, the court of appeal held that the proscription against the use of a fact which is an element of the crime to impose the upper term does not apply where, as here, the trial court imposes the midterm. (*Ibid.*) Applying *Garcia*, we conclude that the trial court could consider D.C.'s age as it related to vulnerability in imposing the midterm.

Defendant also contends the trial court failed to give due consideration to D.C.'s "willing participation" in the incident. During the sentencing hearing, defense counsel argued that D.C.'s willing participation in the encounter with defendant "was a legally appropriate circumstance in mitigation." The trial court rejected defense counsel's argument, stating, "This was an attempt by the defendant to deflect responsibility for this incident." On this record, we conclude that the trial court considered the victim's willing participation in the crime, but rejected the factor as mitigating. (*People v. St. Germain* (1982) 138 Cal.App.3d 507, 524.) The trial court was not required to view D.C.'s participation in the crime in the same light as defendant's, and its refusal to do so was not an abuse of discretion. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.)

15

Defendant also contends there was a lack of substantial evidence to support the trial court's conclusion that D.C. was "particularly vulnerable." We disagree. The record shows that D.C. was sexually confused and emotionally vulnerable, even suicidal, at the time of his first encounter with defendant. The trial court could reasonably conclude, on the basis of this record, that D.C. was "particularly vulnerable" within the meaning of rule 4.421(a)(3). (See *People v. Bloom* (1983) 142 Cal.App.3d 310, 321-322 ["As used in the context of rule 421(a)(3) [(now rule 4.421(a)(3))], a 'particularly vulnerable' victim is one who is vulnerable 'in a special or unusual degree, to an extent greater than in other cases. Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act."].)

Defendant also contends there was a lack of substantial evidence to support the trial court's conclusion that defendant "took advantage of a position of trust to commit the offense." According to defendant, the trial court's conclusion was "based on the false premise that because [defendant] was an Eagle Scout, he was in a position of authority over D.C., a lower-ranking scout." Defendant correctly observes that the trial court did not hear any evidence that the rank of Eagle Scout confers a position of trust. Nevertheless, we conclude that substantial evidence supports the trial court's conclusion that defendant took advantage of a position of trust to commit the offense.

The record shows that D.C. shared intimate feelings with defendant, thereby reposing trust and confidence in him. To occupy a position of trust, the defendant need not be a parent, relative, quasi-parent, religious figure, or babysitter. All that is required is "a person in whom [the victim] reposed trust and confidence." (*People v. Franklin* (1994) 25 Cal.App.4th 328, 338.) The trial court could reasonably conclude that defendant assumed a position of trust and confidence by lending a sympathetic ear to a troubled adolescent, and took advantage of that position to commit the present offense.

16

Thus, we conclude that substantial evidence supported the trial court's conclusion that D.C. was "particularly vulnerable," and defendant "took advantage of a position of trust to commit the offense."

### III.  Other Issues

Finally, defendant contends the trial court's selection of the midterm sentence violated his federal constitutional right to due process.  (U.S. Const., 14th Amend.)  We disagree.

"In analyzing the procedural issues it should be kept in mind that we are here dealing with a sentencing hearing following a plea of guilty. . . .  The due process issues are much different when the guilt of a defendant has been properly established, and all that is left is for the court to select an appropriate sentence."  (*People v. Zikorus* (1983) 150 Cal.App.3d 324, 332-333.)  While due process does not require the same safeguards at sentencing hearings as in the case of a trial on the issue of guilt, " 'an applicant for probation is nevertheless entitled to relief on due process grounds if the hearing procedures are *fundamentally unfair*.' "  (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754 (*Arbuckle*).)

Here, there was no violation of defendant's due process rights.  As we have shown, substantial evidence supported the trial court's sentence.  Accordingly, the sentence was not fundamentally unfair.  (*Arbuckle*, *supra*, 22 Cal.3d at p. 754.)

## DISPOSITION

The judgment is affirmed.


     BUTZ          , J.


We concur:


     BLEASE        , Acting P. J.


     MAURO         , J.